# McCORD, BRADY & CO. ET AL. v. THE ALBANY COUNTY NATIONAL BANK ET AL.

CHATTEL MORTGAGE — BOOK ACCOUNTS MORTGAGED — REPLACEMENT OF GOODS AND ACCOUNTS — PROCEEDS OF NEW ACCOUNTS IN HANDS OF ADMINISTRATOR OF DECEASED MORTGAGOR'S ESTATE — PRIORITIES.

1. Where a chattel mortgage is given by a merchant upon his stock of merchandise and book accounts, without specifying in the description goods thereafter acquired and accounts thereafter accruing, but by a provision in the mortgage, permission is granted to the mortgagor to use, handle, operate, manage, and control the property mortgaged, and to market, sell, and dispose of portions thereof in the course of business, replacing the parts sold with other property of like kind and character, either with the net proceeds of the mortgaged property or otherwise, all of which to be subject to the operation and effect of the mortgage, and the business is carried on as before by the mortgagor and his administrator respectively,

without additional capital, in the course of which, accounts are collected, goods are sold, and new accounts accrue from the sales; the lien of the mortgage will attach to the goods acquired, and to the accounts accruing subsequent to the execution of the mortgage.

2. The mortgagee under such a mortgage has a prior right to the proceeds of the new accounts in the hands of the administrator of the deceased mortgagor's estate, as against subsequent mortgages which specifically cover goods afterward acquired, and accounts afterward accruing.

[Decided December 12, 1896.]

For decision on petition for rehearing, see 48 Pac., 1058.

Error to District Court for Albany County, Hon. J. H. Hayford, Judge.

Proceedings upon the distribution of the proceeds of the estate of John Quann, deceased.

Upon the coming in of the final report of James Vine, administrator of the estate of John Quann, deceased, the Albany County National Bank filed objections thereto, asking that it be so amended as to protect the rights of the objecting bank to the proceeds of the estate under a certain chattel mortgage executed to it by the decedent in his lifetime. A hearing was had upon the objections, and generally the claims of the bank were sustained, to which exceptions were taken by other creditors, who prosecuted error from the order made upon the hearing.

January 4, 1893, John Quann, a grocery merchant in the city of Laramie, having a store containing a stock of merchandise and also a grain warehouse and a hay warehouse, and also having sundry book accounts and credits, to secure an indebtedness of $5,800 payable on demand, gave a chattel mortgage to the Albany County National Bank covering "all his stock of merchandise, consisting of groceries, flour, feed, grain, shelf goods, canned goods, apples, fruits, wooden ware, furniture, and fixtures consisting of shelves, counters, show cases, and all goods, wares, and merchandise of every character and

description whatsoever *then lying, being, situate, and contained in his certain store building at number 113 Grand Avenue* \* \* \* at present the storehouse and place of business of the said party of the first part known as the Quann grocery store. This chattel mortgage includes every specie of merchandise and stock now used and contained in the said business. Also all books of account appertaining and belonging to the said business \* \* \* including day books, journals, ledgers, cash book, and blotters, and the accounts entered in said books." It was provided in said mortgage that Quann might use, handle, operate, manage, and control the property mortgaged, and market, sell, and dispose of portions thereof as might be necessary in the course of business, and to preserve and care for the same, and to replace such property or parts sold with other property of like kind or character, which property replaced might be purchased either with the net proceeds of the mortgaged property or otherwise, but all of which should be subject to the operation and effect of said mortgage.

Subsequently, on January 11, 1893, to secure the sum of $1,628.94 Quann gave another mortgage to Mc Cord, Brady & Co. covering "the entire stock of merchandise of said Quann, consisting mainly of groceries, flour, feed, grain, shelf goods, canned goods, apples, fruits, woodenware, and all other articles of merchandise and trade whatsoever owned and kept by said Quann in his said store building. \* \* \* *Together with all articles of like kind kept by said Quann in his warehouse situated on lots one, two, and three in block 218* in the city of Laramie, and also all the furniture and fixtures, wagons, horses, safes, tools, implements, and equipment, of all kinds whatsoever, owned by said Quann or used by him in connection with his grocery business at said city or elsewhere, and together *with all articles of like kind, character, or description that may be acquired by said Quann or added to the said property above described during the existence of the lien created by the said*

*mortgage.* Also all the books of account, notes, evidences of indebtedness, choses in action, claims, demands, and credits of all kinds whatsoever, including all accounts receivable then due or owing to said Quann from any and all persons whomsoever, *and all such claims*, demands, and accounts as may hereafter become due or owing to said Quann."

It was further provided in said mortgage that Quann might use, handle, operate, and control the property mortgaged, and market, sell, and dispose of portions thereof as might be necessary in the course of business, or to preserve and care for the same and to replace such property and the parts sold with other property of like kind and character, which property replaced might be purchased either with the net proceeds of the mortgaged property sold or otherwise. All of which should be subject to the operation or effect of said mortgage. And to retain out of the proceeds of such sales sufficient sums of money to pay the necessary expenses of conducting the said business and of making the necessary replacements of stock, applying the residue of such proceeds as fast as the same should accrue from time to time upon the payment of the indebtedness secured by said mortgage.

At the same time Quann gave like mortgages to D. M. Steele and Co., securing $475.55, and to the Laramie National Bank, securing $210.90, which by simultaneous filing became pro rating mortgages with that of Mc Cord, Brady & Co.

And at the same time Quann gave like mortgages to the Inland Crystal Salt Company for $24.86; to the J. K. Armsby Company, for $185.88; to Newton Potee for $174, which were filed simultaneously, but after the three preceding mortgages, and also gave a like mortgage to John W. Connor, securing $825.12, which was filed subsequent to all the others.

After giving these mortgages, Quann continued his business, buying and selling, depositing the proceeds in the Albany County National Bank, and paying for pur-

chases out of such fund, and making payments to creditors, reducing the debt of the Albany County National Bank to $5,084.30.

The mortgaged property remained in the possession of Quann, and after his death in the possession of his administrators until finally disposed of. Thomas Blair was first appointed administrator of his estate. He continued the business for about eight months, when he resigned and James Vine was appointed to succeed him. Three days after his appointment, Vine reported certain funds on hand for distribution, including $599.05 proceeds of collections upon accounts mentioned in the inventory of the estate, which had been incurred since the date of the mortgage of the Albany County National Bank; and reported that said sum seemed to be payable to McCord, Brady & Co., D. M. Steele & Co., and the Laramie National Bank, pro rata, by reason of their respective mortgages. On the same day the court, on the application of the administrator for an order of distribution, directed, among other things, that said sum of $599.05 be paid to the last above-named parties in proportion to their respective demands.

The payment of said sum to said creditors referred to in the final report was objected to by the Albany County Bank, on the ground that it represented the proceeds of the collection of accounts, which were subject to the lien of its first mortgage. Several other items of credits claimed were also objected to.

The matter came on for hearing on March 7, 1896, all the mortgage creditors being present or represented, and thereupon the court adjudged said sum of $599.05 to be subject to the lien of the objecting bank, and that it should be considered, for the purposes of distribution, in the hands of the administrator, and that the respective portions thereof theretofore paid to the other mortgage creditors above named should be deducted from dividends to be thereafter paid 'them. The court also adjudged that the objecting bank had a prior lien, under its mortgage,.

upon the property therein described, including the avails thereof in the hands of the administrator, and including all moneys collected from accounts made from the sale of the stock, fixtures, and other property covered by the mortgage to said bank. The other creditors excepted to the findings and orders of the court in the premises.

No new capital was added to the business, except the profit which accrued therein. Sales of the goods were made, credit was given to purchasers from time to time, accounts collected, and the money from sales and collections of old and new accounts indiscriminately used to purchase new goods from time to time, and occasionally to pay portions of the secured indebtedness. The accounts accrued from the sales of goods originally in the stock when mortgaged, and other goods subsequently placed therein with the proceeds of the business.

*N. E. Corthell*, for plaintiff in error.

The mortgage held by the Albany County National Bank covered only the merchandise in the store, and certain fixtures therein, and the book accounts then existing. The other mortgages cover after acquired goods, and subsequently accruing accounts. The bank must trace the identical proceeds of the property embraced in its mortgage through all its transformations into the particular moneys remaining with the administrator for distribution, and must show that the lien of its mortgage followed these funds, and attached finally to the moneys, in the administrator's hands. Otherwise, the plaintiffs in error are entitled. ratably to such moneys. There is a marked difference between the two statutory provisions, authorizing respectively the inclusion of after acquired property in a chattel mortgage (R. S., Sec. 76) and the sale of property and its replacement by the mortgagor (Laws 1890–91, p. 369). Under the latter provision the mortgage operates only upon such property as may be purchased to replace like mortgaged property sold, in the course of business. (Rogers v. Gage, 1 Mo. App., 21;

Montgomery v. Chase, 30 Minn., 132.)  The new accounts, not existing when the bank's mortgage was taken, can not, by any process of reasoning, be brought within the terms of that mortgage.  They were neither a part of the property on hand, nor acquired by way of replacement.  This court has declined to hold that the lien of a chattel mortgage follows the proceeds of the mortgaged property.  (Cone v. Ivinson, 4 Wyo., 203; Bank v. Luman, 5 Wyo., 159, 42 Pac., 874, 43 id., 514.) That the new accounts are not subject to the bank's mortgage, the following authorities were cited.  (Rhines v. Phelps, 8 Ill., 455; Hunt v. Bullock, 23 Ill., 326; Curtis v. Wilcox, 49 Mich., 425; Byam v. Johnson (Ia.), 61 N. W., 970; Mayer v. Freeman (Cal.), 44 Pac., 357; Bank v. West, 46 Me., 19; Lormer v. Allyn, 64 Ia., 725; Phillips v. Both, 58 Ia., 499; Holsizer v. Opdyke (N. J.), 7 Atl. 879; Rose v. Bevan, 10 Md., 463; Rosenberg v. Thompson 8 S. W., 895; Bank v. Taylor, 67 N. W., 677; Hubbell v. Allen, 90 Mo., 574; Hamilton v. Rogers, 8 Md., 321.)  It has been held that where a mortgage provides that the mortgagor may sell and apply the proceeds on the debt, he becomes the agent of the mortgagee, and the proceeds are a satisfaction protanto of the mortgage debt, whether paid over or not.  (Conkling v. Shelby, 28 N. Y., 360; New v. Sailors, 114, Ind., 407; Mayer v. Feig, id., 577.)  The deposit of proceeds of sales in the bank amounted to a payment of the debt.

*M. C. Brown*, for defendant in error.

Before forfeiture, the mortgagor may sell the mortgaged property, subject to the payment of the mortgage debt. (Jones on Chat. Mort., Sec. 454 and cases cited.)  The purchaser gets what the mortgagor had and no more. (Mc Candless v. Moon, 50 Mo., 511; Russell v. Fillmore, 15 Vt., 130; Hammond v. Plympton, 30 Vt., 333; Arnold v. Stock, 81 Ill., 407.)  By a chattel mortgage the legal title passes to the mortgagee.  (Jones Chat. Mort., Sec. 1.)

There remains, then, in the mortgagor, where by the terms of the mortgage possession is permitted to remain in the mortgagor, possession and right of redemption until default. So much he can convey, either by absolute sale or conditional sale, such as chattel mortgage. The vendee or second mortgagee obtaining nothing by his conveyance but what the mortgagor had, simply stands in the shoes of the mortgagor, having no greater or other rights. The situation, then, as to the confusion of mortgaged property or confusion of proceeds, would stand the same between the first mortgagee and the second mortgagee as between the first mortgagee and the mortgagor.

The general rule is that loss and inconvenience arising from confusion of goods must be borne by the party causing the confusion. (Kreuger v. Cooney, 45 Md., 582; Hart v. Ten Eycke, 2 Johns (N. Y.), Ch. 62; Bank v. Mc Laughlin, 2 Fed., 128; Adams v. Wylde, 107 Mass., 123; Willard v. Rice, 11 Met. (Mass.), 493; Story on Agency, 202; Lupton v. White, 15 Ves., 432; Fuller v. Page, 26 Ill., 358; Jones Chat. Mort., Sec. 481.) The conversion of the property into money, and all the money that was in the hands of the administrator for distribution, was a conversion by the mortgagor. That is to say, the act of the administrator in continuing this business, in creating new accounts, and in finally collecting the accounts, or collecting the moneys for goods that were sold on credit, is the same as if Quann himself had lived until the goods were disposed of, as they were finally disposed of by the administrator. The act of the administrator is practically the act of John Quann, the mortgagor. Surely John Quann, had he lived to convert these goods into money, and that result had been accomplished by selling them in part on time and afterwards making collections for the goods so sold, would not be heard or permitted to claim any portion of the avails of the goods or the funds derived from the sale thereof as against his mortgagee. It would be strange if a man could mortgage his goods to one person and then dispose of them in

the usual course of business on credit, having given another man a mortgage on future accounts created, and thus deprive his original mortgagee of his entire security, and by changing the character of the property give it to his second mortgagee. We think a proposition so absurd as this can not seriously be entertained. If the old accounts were replaced by new ones, under the very terms of the mortgage the lien thereof would extend to the new accounts as well as to the new goods. In any event, the only remedy of the defendant bank would be to recover the avails of the mortgaged property while in the form of goods sold or accounts converted into money, or into new accounts. It being clear from the evidence in this case that the new accounts are the avails of the goods conveyed by the first mortgage to the Albany County National Bank, we believe that there can be no question as to the right of said bank to recover the same. The mortgagee has the right to pursue the proceeds of the mortgaged property when they are in the hands of the mortgagor. (Rock Springs N. Bank v. Luman, 42 Pac., 874; 43 Pac., 515.) The conversion of property by a mortgagor into money or other form of property, so long as it remains in the hands of the mortgagor is a trust fund, and is made to respond to the mortgage debt. (Brown v. Stewart, 1 Md., Ch. 87; Story's Eq. Jur., Secs. 533, 1232–53–55; 1257–58; 1285–87; Lathrop v. Bampton, 31 Cal., 17; Lench v. Lench, 10 Ves., 511; Ex parte Morgan, 12 id., 6.)

Conaway, Justice.

The litigation in this case is as to the personal property and accounts covered by certain chattel mortgages executed by John Quann in his lifetime, in favor of the Albany County National Bank, and in favor of the several plaintiffs in error. The mortgage of the Albany County Bank is prior in point of time, and it seems to be admitted that it constitutes a prior lien upon the property and accounts embraced within its terms. Its language is not so comprehensive as that contained in the subsequent mortgages.

Quann was engaged in business as a grocery merchant, having a stock of goods in his store building, and having, also, elsewhere in the town, what is termed a grain warehouse and a hay warehouse.

On January 4, 1893, John Quann gave a chattel mortgage to secure an indebtedness of $5,800 to the Albany County National Bank upon "all his stock of merchandise, consisting of groceries, flour, feed, grain, shelf goods, canned goods, apples, fruits, woodenware, furniture and fixtures consisting of shelves, counters, showcases, and all goods, wares, and merchandise of every character and description whatsoever, then lying, being, situate, and contained in his certain store building at No. 113 Grand Avenue. * * * Also all books of account appertaining and belonging to said business * * * and the accounts in said books." The mortgage provided that the mortgagor might "use, handle, operate, manage, and control the property mortgaged, and market, sell, and dispose of portions thereof as might be necessary in the course of business, and to preserve and care for the same, and to replace such property or parts sold with other property of like kind and character, which property replaced might be purchased either with the net proceeds of the mortgaged property or otherwise, but all of which should be subject to the operation and effect of said mortgage." This character of mortgage is expressly authorized by statute. (Sess. Laws 1890–91, p. 90, Sec. 13.)

The subsequent mortgages of plaintiff in error were executed on January 11, 1893. They include the goods and accounts of the business of Quann covered by the mortgage of the Albany County Bank, and "all articles of like kind and character kept by said Quann in his warehouse," etc. They also include a horse and delivery wagon of small value not mentioned in the first mortgage. The evidence tends to prove that at the time of the execution of this first mortgage Quann had about thirty-six to forty-two dollars' worth of hay in the hay and grain warehouse, and about twenty dollars in money. The trial court

allowed the subsequent mortgagees $90 of the proceeds of the mortgaged property. This was evidently on account of the hay, the money, and the horse and wagon, and seems amply sufficient to cover them all.

But it is urged on behalf of plaintiffs in error that they as subsequent mortgagees should have been allowed a much larger sum. The subsequent mortgages specified the goods on hand and those that might afterward be acquired, and the accounts already owing and those that might afterward accrue. The first mortgage was not thus specific in this particular. We are of the opinion that this was not necessary. The first mortgage seems to be in the usual, and in good form under the statute. The evidence seems to sustain the finding of the trial court. The several reports of the administrators of Quann show that the business was carried on by himself and the administrators without addition to the capital employed in the business at the time of the execution of the first mortgage, except a very moderate profit in the business. Under these circumstances it would seem clear that the lien of the first mortgage should attach to the goods subsequently acquired and the accounts subsequently accruing from the use of this capital. It was a replacement, in the usual course of business, of the goods and accounts originally mortgaged. It is claimed that this court has held that the lien of a mortgage follows the mortgaged property and not the proceeds of such property. The case of Luman v. The Rock Springs National Bank, 42 Pac., 874, 43 Pac., 513 (6 Wyo.), is cited to this point. In that case it was held that, under a mortgage similar to the one under discussion here, the mortgagee was entitled to the proceeds of the mortgaged property as against a third party receiving such proceeds with notice of the facts, and the bank was compelled to pay a large sum in consequence. The case of Cone v. Ivinson, 4 Wyo., 203, is also cited.

A celebrated French diplomat is credited with the saying that language was invented to conceal thought. The language of the petition in the case of Cone v. Ivinson

was so very efficient for this purpose that the court was not informed, either by direct averment or by an inuendo or intimation from which an inference might be drawn, whether the mortgage in the case was one under which portions of the property might be sold by the mortgagor discharged of the mortgage lien or not.   As this was a material element in the plaintiff's cause of action, it was for him to allege and prove.   As he did not do so, the inference would naturally be that it was a mortgage in the ordinary form, discussed by all the principal authorities, under which the mortgagor could not discharge the mortgage lien upon the property by a transfer of the property, except in certain exceptional cases.   The author of this opinion filed a dissenting opinion in that case, not so much in regard to the legal principles involved as to the effect of the facts alleged.

*Judgment affirmed.*

Groesbeck, C. J., and Potter, J., concur.