WEBER BROTHERS v. EDWARD WHETSTONE.

FILED JANUARY 3, 1898.   No. 7683.

1. Instructions: REQUESTS: REVIEW.   Before error can be predicated
   upon the failure of a district court to instruct the jury on some
   particular feature of a case the party complaining must have by a
   proper instruction requested the court to instruct upon such
   feature.

2. **Animals: Agister's Lien.** One who feeds and takes care of live stock in pursuance of a contract therefor with the owner has a lien on such stock to secure his recompense for such feed and care. (Compiled Statutes, ch. 4, art. 1, sec. 28.)

3. ———: ———. An agister cannot be deprived of his lien upon live stock except by his voluntary relinquishment thereof or by such conduct on his part as estops him from asserting it.

4. ———: ———. The taking by the owner of live stock from the possession of his agister without the latter's consent does not divest his lien.

5. ———: ———. If a lien exists against live stock for its feed and care a purchaser of such stock is charged with notice of such lien. That he purchased such stock for value without actual notice of such lien affords him no protection against the same.

ERROR from the district court of Dawes county. Tried below before BARTOW, J. *Affirmed.*

*C. Dana Sayrs* and *John S. Murphy,* for plaintiffs in error.

*E. S. Ricker, contra.*

RAGAN, C.

This is an action in replevin brought in the district court of Dawes county by Weber Bros. for certain cattle. The defendant Edward Whetstone claimed that he was entitled to possession of the cattle and had an agister's lien thereon to secure a compensation of $20 agreed to be paid him by the owner of the cattle for herding, feeding, and caring for the same. The trial resulted in a verdict and judgment in favor of Whetstone, and Weber Bros. prosecute error.

1. The first argument is that the court erred in giving to the jury the following instruction: "The jury are instructed that, as a general rule of law, the purchaser of personal property in good faith for value, where delivery of the property accompanies the purchase, is protected against the claims of third parties, but that the owners of stolen property have a right to pursue the same and recover it wherever and in whomsoever's possession it

may be found, regardless of the circumstances under which such possession may have been acquired. So, if property rightly in the possession of any person, and where the law makes such possession the basis of a lien, is, over his protest and forcibly, taken from him,—not necessarily with force and arms, but in such a manner as the person in possession could not prevent,—the possessor's right would not thereby be lost; and under such a statute as the one quoted from in Number 5 of these instructions, purchasers would be put upon inquiry before they can be protected as innocent purchasers from the assertion of such lien." The criticism upon this instruction is the reference of the court therein to the rights of the owner of stolen property to reclaim it. Counsel correctly say that there was no evidence in this case that any of the property in controversy had been stolen. The evidence shows that the owner of these cattle employed Whetstone to herd and take care of them and for that purpose put them in his possession and agreed to pay him for herding them $20; and while the cattle were so in Whetstone's possession the owner sold them to a man named Hubbard, and he, with force and arms, or at least over the objection and protest of Whetstone, took the cattle out of the latter's possession and sold and delivered them to Weber Bros. On the trial Weber Bros. contended that they were purchasers of the cattle without notice of Whetstone's lien and, therefore, entitled to take the cattle discharged from said lien. In view of this evidence we think that while the instruction may be open to the criticism made upon it by counsel, their clients could not have possibly been prejudiced by it.

2. A contention of the plaintiffs in error on the trial was that Whetstone by his conduct had estopped himself from asserting his lien upon these cattle as against the plaintiffs in error; and another argument here is that the court erred in not giving to the jury an instruction on the law of estoppel as applied to the facts of this case.

A sufficient answer to this argument is, if counsel desired an instruction given to the jury on the question of estoppel, he should have prepared and presented to the court an instruction on that feature of the case with the request that it be given. Not having done this, he cannot now be heard to insist that the court erred because it neglected to give such an instruction. (*German Nat. Bank v. Leonard*, 40 Neb. 676; *Barr v. City of Omaha*, 42 Neb. 341.)

3. A third argument is that the court erred in refusing to give to the jury the following instruction: "The court instructs the jury that if they find from all the evidence that the firm of Weber Bros. purchased the cattle in question on the 11th of October, 1894, without notice of any lien that the defendant Edward Whetstone had upon said cattle, if any he had, then you will find for the plaintiffs and return a verdict in their favor." Whetstone having herded, fed, and cared for these cattle in pursuance of a contract with their owner, and being in possession of the cattle for such purpose under such contract, and having performed the contract, or a part of it, was vested by statute (Compiled Statutes, ch. 4, art. 1, sec. 28) with a lien upon the cattle to secure his compensation for their care, and any one who dealt with those cattle or purchased them was bound to take notice of this lien; and Hubbard, when he purchased the cattle of their owner, took the cattle charged with that lien. They were then in the actual possession of Whetstone, and when Hubbard sold them to Weber Bros., the latter took them charged with Whetstone's lien. True, at that time they were not in the actual possession of Whetstone, but had been taken from him that day by Hubbard by force. The rule of *caveat emptor* applies to one who purchases personal property, and though such purchaser may pay a valuable consideration for such property and at the time have no knowledge that another has a lien upon it for its feed or care, he cannot protect himself as against an agister's lien simply because he is an inno-

cent purchaser of the property without notice of the lien. The agister cannot be deprived of his lien except by his voluntary relinquishment of it or by some act or omission upon his part which would estop him from asserting it as against a purchaser. He does not lose his lien upon the property simply because of the fact that it is taken from his possession without his consent and sold to another who has no notice of the lien. (*Kroll v. Ernst*, 34 Neb. 482.)

The court did not err in refusing to give the instruction, and its judgment is right and is

AFFIRMED.