## HALL v. BLACK.

No. 11377—Opinion Filed June 19, 1923.

Rehearing Denied Nov. 6, 1923.

**1. Animals—Statute—Grazing or Herding Lien.**

Section 3982, Comp. Stat. 1921, provides: "Any person employed in feeding, grazing or herding any domestic animals, whether in pasture or otherwise, shall have a lien on said animals for the amount due for such feeding, grazing or herding."

**2. Same —Pasturing— Written Contract — Replevin.**

Where A. contracts with B. for the pasturing of certain cattle at a stipulated sum set forth in the written contract, and B. drives off the cattle and refuses to pay, A. may bring replevin for the amount due under the contract and to enforce his lien.

**3. Same—Possession by Bailee—Necessity.**

The lien provided for by our statute is not designated as the possessory lien, nor is it by the terms of the statute dependent upon possession, but is remedial in its nature and should be construed in favor of the class for whose protection it was enacted.

**4. Same—Waiver of Lien—Intention.**

An intention to waive a lien will not be presumed in the absence of evidence tending to show such intention, and whether or not a particular transaction amounts to release of lien is a question of intention on the part of the releasor, and in a doubtful case, such intention will not be implied.

**5. Appeal and Error—Evidence—Sufficiency.**

Record examined in this case, and there being sufficient competent evidence to sustain the verdict of the jury, the same will not be disturbed on appeal.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Ellis County; Frank Mathews, Assigned Judge.

Action in replevin instituted by O. A. Black against H. E. Hall in foreclosure of lien for pasturing and grazing cattle. From a judgment of the district court in favor of the plaintiff, defendant brings error. Affirmed.

C. B. Leedy and T. R. Blaine, for plaintiff in error.

Frank E. Ransdell, for defendant in error.

Opinion by RUTH, C. This was an action filed in the district court of Ellis county on the 20th day of September, 1918, by O. A. Black, defendant in error, plaintiff below, against H. E. Hall, plaintiff in error, defendant below. For the sake of convenience the parties hereto will be designated as they appeared in the court below.

The petition of the plaintiff sets forth the fact that he was the owner of, and the lessee of, large acreages of land in Ellis county suitable for grazing purposes, and on the first day of May, 1918, that the defendant, H. E. Hall, approached him and desired to pasture his cattle on the land of the plaintiff, and after looking over the land, the plaintiff and defendant, on the first day of May, 1918, entered into a written agreement, whereby the plaintiff agreed to pasture 253 head of cattle on his land in Ellis county, and the defendant agreed to pay the plaintiff $1,100 for said pasturing before the removal of the said cattle, and to remove any and all of said cattle on or before November 15, 1918, and the plaintiff agreed to return to the defendant a like number of cattle, and replace or pay the market price for any strayed or stolen cattle. The plaintiff further alleges that he had a special interest and lien upon the said cattle, and that the same were unlawfully detained from him by the defendant and brings his action to foreclose his lien thereon. The defendant gave redelivery bond and retained possession of the cattle, and to the plaintiff's petition, he filed answer consisting of a general denial.

On the 13th day of November, 1919, the cause came on for hearing in the district court of Ellis county upon the pleadings, and before the Honorable Frank Mathews,

Judge by assignment, upon the issues there-in raised.

Section 3982, Comp. Stats. 1921, provides that any person employed in the feeding, grazing, or herding of domestic animals, whether in pasture or otherwise, shall have a lien on the said animals for the amount due for such feeding, grazing, or herding, and there was no dispute between the parties hereto as to the written contract, and that the sum agreed to be paid by the defendant for pasturing the cattle from the 1st of May, until the 15th of November, if not sooner removed by the defendant, and that payment was to be made upon their removal. It appears from the evidence that the defendant visited the plaintiff's premises where the cattle were being pastured for various purposes, and in June, 1918, the plaintiff notified defendant that black leg had broken out among his cattle and four head had died therefrom, and thereupon the plaintiff came to defendant's pasture and vaccinated the remaining cattle, and plaintiff offered to show defendant the carcasses of the four dead animals, and after exhibiting one, the defendant stated that he did not care to see the others, but proceeded with the vaccination, that thereafter, on or about September 17, 1918, the defendant again visited plaintiff's home adjacent to his pasture, and announced that he had come for his cattle, and nowhere in the evidence does it appear that defendant made any objection to the number of cattle in the pasture, and plaintiff counted his cattle out to him and discovered that there were six head short, including the four dead cattle, showing that two had either strayed or been stolen, and for the value of which the plaintiff was liable to the defendant.

It further appears from the evidence that after the cattle had been counted out of the pasture into the public highway, the cattle, and plaintiff, and defendant, with others, proceeded slowly down the road toward the home of the plaintiff, and after proceeding approximately two miles, the plaintiff announced that he would have to "turn off here" to go up to his home, and he then and there requested settlement for pasturing under the terms of the contract, and agreed to give to the defendant two extra steers of practically the same kind and weight, but remembering that his steers had the "association mark," offered to pay the market price of the two strayed or stolen steers, and upon refusal of payment by the defendant, the defendant took the cattle into his possession and, with the men who had accompanied him, proceeded to drive off the cattle, whereupon the plaintiff instituted proceedings in replevin, claiming that he had a lien upon the cattle for pasturing, and that there was due him the sum of $1,100, less the market value of the two strayed or stolen steers, which value was placed at approximately $70.

Upon trial had, the jury returned a verdict in favor of the plaintiff, to which the defendant excepted and filed his motion for a new trial which was in due course overruled, whereupon the defendant gave notice of appeal in open court and brings this action here for review. The plaintiff in error presents four propositions:

(1) Can an action in replevin establish a lien of any character against personal property?

(2) Does a contractual lien establishing a bailment precede a statutory lien, or can both be concurrent? If both be concurrent, each are waived by a voluntary surrender and delivery of the property, in good faith, without fraud, deceit, and duress.

(3) The appellee surrendered and delivered voluntarily the property to the appellant, thereby waiving his contractual and statutory lien, if he had any.

(4) The judgment of the court was not supported either by the law or facts, and is contrary to law.

With respect to the first proposition of the plaintiff in error, it is sufficient to point out that the action in replevin was instituted for the purpose of enforcing the lien by a recovery of the property, and the sale of so much thereof as would satisfy the amount found to be due to the plaintiff from the defendant. We cannot conceive of two business men engaged in the cattle business entering a pasture and putting cattle into lands for pasture without having some definite understanding as to the price to be charged for such pasturing, and the length of time the cattle should remain in such pasture. True it is that men may enter into contracts relying upon the custom in that particular community for payment of the pasture, but it is undeniably true, and is certainly the better procedure, to have a definite understanding, and reduce that understanding to writing, to avoid confusion and misunderstanding in the future, and when such contract is reduced to writing, and provides that payment shall be made immediately upon the removal of the cattle by the defendant, and

the defendant proceeds to take the cattle without such payment, replevin is the proper remedy to enforce the lien provided for by our statute.

In answer to the second query propounded by the plaintiff in error, it is beyond question that by entering into the written contract, and providing therein for the amount to be paid by the defendant for pasturing, and that such would be paid upon removal, that both parties had in mind the statutory provisions providing a lien upon the cattle so pastured, and there could be no conflict between the written contract and the lien created by statute; and, in answer to the second part of the second query, it is true that the lien may be waived by voluntary surrender and delivery of the property in good faith, without fraud, deceit, or duress; and, in this connection, we discuss the third proposition, wherein the plaintiff contends that the appellee surrendered and delivered voluntarily the property to the appellant, thereby waiving his contractual and statutory lien, if he had any. With respect to what constitutes a waiver of a lien, it is held that the circumstances surrounding the particular transaction of the delivery and to whom delivery was made, would be the best guide for determining the intention on the part of the releasor. If it was the intention of the plaintiff in this case to deliver possession to the defendant, and if such delivery was actually made, and the defendant was put in possession of the cattle, this, of itself, would not constitute a waiver of the lien of the plaintiff where the rights of no third party had intervened, for Mr. Justice Kane, of this court, in the body of the opinion delivered by him in National Bank of Commerce v. McDaniel et al., 71 Oklahoma, 174 Pac. 28, says:

"The lien provided for our statute is not designated a possessory lien * * * nor is it by the terms of the statute, dependent upon possession. In these circumstances we have no doubt that such possession as persons employed in feeding, grazing, or herding domestic animals ordinarily have of the herds intrusted to their care by the owner, is sufficient to create a lien in their favor under the statute, which is remedial in its nature, and therefore should be construed in favor of the class for whose protection it was enacted."

Considering this case in the light of the opinion just quoted, let us examine the facts in this case and ascertain if the actions of the plaintiff could in any manner be construed as an actual delivery to the defendant. All the transactions with reference to the contract for pasturing were conducted either at the house of the plaintiff on the land, or at the bank in Arnett, and it is not to be presumed that men will go out in a pasturage, probably two miles from human habitation, and there count out the sum of $1,100 and pay it in cash, nor is it to be presumed that the defendant would pay the sum agreed upon until he was satisfied as to the number of cattle in the pasture, and the reasonable manner of ascertaining the number of cattle, and the one that would suggest itself to reasonable men, was to drive the cattle through the gate, counting them as they went through, thereby ascertaining the correct number, and that is what appears to have been done in this case, and plaintiff and defendant proceeded down the road approximately two miles to a point where the plaintiff had to turn off to go to his home, and there the plaintiff requested payment, which was then and there refused, and defendant proceeded to drive away the cattle. We cannot hold that the actions on the part of the plaintiff constituted either an actual or a constructive delivery of the animals into the possession of the defendant as would constitute a waiver of the lien, under the decision just quoted, which is supported by decisions of other states having statutes similar to ours.

25 Cyc. 674, lays down the general proposition as follows:

"A lien may be waived by express agreement, written or parol, based upon a valuable consideration, as by a release to one claiming an interest in, or junior lien on, the property; or it may be lost by operation of law. It may also be waived or lost by implication, the question whether or not there is a waiver in a particular case being one of the intention to be determined from the circumstances. Thus a lien may be impliedly waived by acts or conduct on the part of the lienholder inconsistent with the existence of the lien, as by his entering into a special agreement inconsistent therewith, or by wrongfully converting the property."

"An agister cannot be deprived of his lien except by his voluntary relinquishment of it. He may lose or waive his lien by a disavowal of it, by the institution of proceedings inconsistent therewith, or by an agreement between the parties, based on a legal consideration." Brown v. Holmes, 21 Kan. 687; Danforth v. Pratt, 42 Me. 5; Weber v. Stone, 53 Neb. 371.

Nowhere in the record does it appear that there was any act or omission on the part of the plaintiff which would estop him from asserting his lien in this case, nor did he institute proceedings inconsistent therewith, as the proceeding instituted was one in

replevin to repossess himself of the identical property, or so much thereof as would satisfy his lien, and for the enforcement of his lien, and the plaintiff's action in counting out the cattle and remaining in the presence of the defendant and requesting payment of him, and his institution of the replevin proceedings to enforce the lien are certainly consistent and at no point did he evince any intention of relinquishing his lien upon the cattle.

In 25 Cyc. 761, the general proposition is laid down that:

"An agister's lien is not, as between the parties or third persons having notice thereof, lost by change of possession not inconsistent with it and not under circumstances indicating an intent to waive, relinquish or abandon it. * * * Continuous possession of the property is essential only as between the lienor and third parties, as between the immediate parties the lien may continue after change of possession."

This position assumed by this court and laid down by Cyc. is amply supported in Becker v. Brown, 65 Neb. 204, 91 N. W. 178; Allen v. Spencer, 1 Edm. Sel. Cas. (N. Y.) 117; Scott v. Nesbit, 14 Ves. Jr. 439; 9 Rev. Rep. 318, and cases cited.

"An intention to waive a lien will not be presumed in the absence of evidence clearly tending to show such intention." Hugo Muench v. Valley Nat. Bank, 11 Mo. App. 144.

"Whether or not a particular transaction amounts to a release of a lien * * * is a question of intention on the part of the releasor. In a doubtful case, such intention will not be implied." Stribling v. Splint Coal Co., 31 W. Va. 82.

A careful examination of the record, and of the evidence in this case fails to disclose any action on the part of the plaintiff to release his lien, but on the contrary his every act discloses the fact that he intended to rely upon his lien under the statute, and to enforce the same for the price agreed upon, and under the terms of the written contract, and as no interest of any third party intervened, even if it were said that possession had been given to the defendant, the lien would still attach and be enforceable, and could be enforced by an appropriate action in replevin before the intervention of any interest of a third party.

With reference to the fourth proposition, that the judgment of the court is not supported by either the law or the facts and is contrary to the law, a careful review of all the evidence discloses that there was sufficient competent evidence introduced by the plaintiff in support of his claim to warrant the same in being submitted to a jury,

and where a jury has found a verdict upon competent evidence, this court will not consider conflicting evidence, and disturb such a verdict.

We are, therefore, of the opinion that the judgment of the lower court should be affirmed, and as the plaintiff below, defendant in error in this court, has prayed judgment against the sureties on the supersedeas bond of the plaintiff in error, George W. Leist and F. E. Van Fleet, it is by the court ordered that judgment be entered against H. E. Hall, as principal, and George W. Leist and F. E. Van Fleet, as sureties on the supersedeas bond, in the sum of $1,015, with interest from the 14th day of November, 1919. Affirmed.

By the Court: It is so ordered.