NOTE—Headnotes (1) and (2) see Appeal and Error, 4 C. J. Secs. 2508, 2516; (1924 Anno); (3), see Courts, 15 C. J. Sec. 418, and Forcible Entry and Detainer, 26 C. J. Sec. 91; (4), (6), (7), (9), (15), (16), (19) see Ejectment, 19 C. J. Secs. 4, 5, 6, 11, (1924 Anno) and Sec. 113; (5), (13) see Actions 1 C. J. Secs. 176, 103, Statutes, 36 Cyc. 1173; (8), (12) see Ejectment, 19 C. J. Secs. 4, 5, Forcible Entry and Detainer, 26 C. J. Sec. 40; (10) see Ejectment, 19 C. J. Sec. 4, Statutes, 36 Cyc. 1188; (11), (17) see Forcible Entry and Detainer, 26 C. J. Secs. 39, 40; (14), (18) see Courts, 15 C. J. 418; Ejectment, 19 C. J. Secs. 92, 6; Forcible Entry and Detainer 26 C. J. Sec. 39.

---

## CARROLL v. ANDERSON

(No. 1073; October 2, 1923; 218 Pac. 1038)

ATTACHMENT—CHATTEL MORTGAGES—SALES BY MORTGAGOR—REPLEVIN AGAINST ATTACHING OFFICER—DEMANDS—WAIVER—FALSE REPRESENTATION—INSTRUCTIONS—FILING OF CHATTEL MORTGAGE.

1. Where defendant in replevin contests the case upon a claim of superior right, he cannot afterward set up the want of demand by plaintiff for possession, to justify the taking or detention.

2. A chattel mortgagee may maintain an action of replevin against a sheriff to recover possession of mortgaged property taken from plaintiff under a writ of attachment.

3. A chattel mortgagee in possession of mortgaged property did not waive his right to such possession by not objecting to a seizure of the goods under a writ of attachment, his failure to object being consistent with an intention later to assert his right to possession by replevin.

4. In a replevin action by a mortgagee for possession of mortgaged property seized by a sheriff under an attachment for the recovery of the purchase price thereof, a finding that title of the goods passed by purchase to the mort-

gagor who mortgaged them to plaintiff, being consistent with the claim for said purchase price, will not be disturbed.

5. A clause in a chattel mortgage covering a stock of merchandise, permitting mortgagor to sell the property in the usual course of business is permitted by statute, Comp. Stats. 1920, Sec. 4698 and is neither fraudulent nor presumptively fraudulent.

6. A chattel mortgage containing permission to sell the mortgaged property in the usual course of business is valid without an agreement to account to mortgagee for proceeds of sales.

7. In a replevin action by a chattel mortgagee of a stock of merchandise, against an officer who had seized the mortgaged property for attaching creditors, an' instruction that current sales by mortgagor after executing the mortgage without applying the proceeds upon the mortgage indebtedness of which sales mortgagee had knowledge, constituted an implied fraudulent agreement between mortgagor and mortgagee that would invalidate the mortgage as against attaching creditors of mortgagee, relied upon by defendant at the trial as a correct statement of the law, will not justify him in contending otherwise on appeal from an adverse finding and judgment.

8. A chattel mortgage covering a stock of merchandise permitting mortgagor to sell therefrom in the usual course of business and replace parts sold with other property of like, kind or character, such replacements to be subject to said mortgage, is not subject to attack by other creditors on the ground that mortgagee permitted mortgagor to use the proceeds of sales for purposes other than the replacement of mortgaged goods, there being no evidence that parts of mortgaged stock so sold had not been replaced.

9. Mere delay in filing a chattel mortgage not having been shown to be in furtherance of a fraudulent purpose, did not effect the validity of the mortgage as to attaching creditors who had no dealings with the mortgagor until several months after the mortgage was filed.

ERROR to the District Court, Laramie County; WILLIAM C. MENTZER, Judge.

Action in replevin by Theodore Anderson as plaintiff claiming the right of possession as mortgagee of a stock of merchandise, against George Carroll as Sheriff of Laramie

County, who had seized said merchandise under a writ of attachment on behalf of other creditors. There was a judgment for plaintiff and defendant brings error.

*C. E. Lane* and *Garwood* and *Garwood* for plaintiff in error.

Plaintiff in error sought to enforce a superior lien upon the merchandise involved in this action as against defendant in error whose claim as chattel mortgagee was shown by the evidence to be fraudulent, void and collusive; no demand was made by the plaintiff before commencing his action of replevin. (Boswell v. First Nat. Bank, 16 Wyo. 193; 92 Pac. 626; 34 Cyc. 1405-1406.) But, irrespective of demand, or rather non-demand, this action will lie against the sheriff, holding under a writ of attachment. (34 Cyc. 1375.) The goods were in the custody of the law. (34 Cyc. 1400.) The chattel mortgage to Anderson was void as to creditors.

1. Because it was withheld from record for a considerable time after its execution.

2. It was given to secure pre-existing notes held without security until creditors began to attach the stock of goods.

3. There was no accounting between the parties.

4. The stock was not replenished, as sales had been made therefrom, but was depleted without the proceeds being applied on the indebtedness.

5. Mortgagor kept no books.

(Hasbrouck v. LaFebre, 23 Wyo. 380; 152 Pac. 169; Durr v. Landay, 84 N. W. 437; Baumbach Co. v. Hobkirk, 80 N. W. 740.)

Section 4698 C. S. permitting mortgagor to sell from a stock of mortgaged goods expressly provides that unless permission is given in the mortgage for the retention of sale proceeds the same must be paid over to the mortgagee. (Hasbrouck v. LaFebre, supra.) Anderson never had title to the goods attached, for the following reasons:

1. The goods were bought by the mortgagor after the chattel mortgage was recorded.

2. The goods were acquired by fraud and with the knowledge and acquiescence of Anderson, to-wit: false and fraudulent statements of both Anderson and the mortgagor; the goods being obtained by fraud a constructive trust resulted; Anderson the mortgagee is estopped by his own acts and laches.

1. In not recording his chattel mortgage for some months after its execution.

2. In taking the chattel mortgage to secure pre-existing notes carried without security, until other creditors threatened attachment.

3. By the credit statements made by mortgagor with Anderson's knowledge.

4. By the manner in which Anderson treated the goods after they were attached;

The evidence discloses a collusive arrangement between Anderson and the mortgagor whereby Anderson could be the owner or one-half owner and partner of the mortgagor, and thus defeat other creditors. A similar arrangement was condemned by the court in, (Stirling v. Wagner, 4 Wyo. 47, 32 Pac. 1128.)

*Walter Q. Phelan* for defendant in error.

Replevin may be maintained without prior demand against an officer who has seized mortgaged property under attachment. (23 R. C. L. 889; Hopkins v. Bishop, 91 Mich. 238; Bunce v. McMahan, 6 Wyo. 24, 42 Pac. 23, 34 Cyc. 1404.) The question of demand cannot be urged for the first time on appeal. (23 R. C. L. 890; Denver Live Stock Co. v. Parks, 41 Colo. 164; 91 Pac. 1110; 14 Ann. Cas. 814.) Replevin is the only method to try title of property taken by an officer under attachment. Plaintiff in error cannot be heard to complain of the giving of instructions numbered 7, 8 and 10, for the reason that they em-

bodied statements of the law, upon which the attachment plaintiff relied to void the chattel mortgage and which were even more favorable to plaintiff in error than he was entitled to; a chattel mortgagee in possession has a title superior to attaching creditors. (50 Mo. App. 564, 46 Mo. App. 16; 109 Ill. App. 138; 53 Wash. 127.) The mortgage permitted sales by mortgagor, and the right to substitute other property, and was therefore valid as against subsequent attaching creditors of the mortgagor. (Peabody v. Landon, 61 Vt. 318; 15 Am. S. R. 903; Bishop v. Sheriff, 35 Ia. 60; Stephens v. Pence, 56 Ia. 258; Blanchor v. Cook, 144 Mass. 207.)

*C. E. Lane* and *Garwood* and *Garwood* in reply.

Absence of demand was raised by answer, argument of the case, and by requested instructions:

1. The evidence established that the goods were obtained by fraud.

2. That the sales were made with knowledge of the mortgagee and none of the proceeds applied on the mortgage.

3. There was no agreement between the mortgagee and the mortgagor that the mortgagor might retain proceeds from sales.

4. More than enough goods were sold to have paid the mortgage in full.

Credit was obtained upon false statements made with the knowledge of the mortgagee; the evidence showed that the mortgage was collusive and fraudulent, and as such had no standing as against general creditors. (Barnett v. Ferfus, 51 Ill. 352; Orton v. Orton, 7 Ore. 478; 33 A. R. 717; Gilbert v. Peppers, 65 W. Va. 355, 36 L. R. A. (N. S.) 1181; Bergman v. Jones, 10 N. D. 520, 88 A. S. R. 739; Bank v. Joannes, 73 N. W. (Wis.) 997; Durr v. Landau, 84 N. W. (Wis.) 437; 11 C. J. 573; 5 R. C. L. 434-435; Stephens v. Curran, 28 Mont. 366; Dobyns v. Meyer, 95 Mo. 132; Claflin v. Foley, 22 W. Va. 434; Rodman v. Norton, 29 So. (Ala.) 637; Wilson v. Voight, 9 Colo. 614; Wile v. Butler,

4 Colo. App. 154; Dodge v. Norlin, 133 Fed. (Colo.) 363; Standard Co. v. Schultz, 25 Pa. St. 625; Skelton v. Connington, 77 N. E. (N. Y.) 790; Nelden Co. v. Coml. Bank, 74 Pac. (Utah) 195.) See also 5 R. C. L. 434. Under such circumstances the mortgage is a mere sham. (Rochelleau v. Boyle, 11 Mont. 469; Hasbrouck v. LaFebre, 23 Wyo. 367.)

KIMBALL, Justice.

This is a replevin action in which the plaintiff, Theodore Anderson, as mortagee in a chattel mortgage, claimed the right to the possession of goods seized on writ of attachment by the defendant, the sheriff of Laramie County. The mortgage to plaintiff was dated July 12, 1920, from William Angelos, mortgagor, to secure an indebtedness of $6000 evidenced by 6 promissory notes for $1000 each, the first due January 12, 1921, and the others at 6-month intervals thereafter. The mortgaged property was a stock of merchandise employed in retail trade. The mortgage, in addition to a provision permitting the mortgagor to retain possession until default, contained the following clause:

"Permission is hereby given to said party of the first part to use, handle, operate, manage and control the above described property, and to market, sell and dispose of portions thereof as may be necessary in the course of business and to replace such property or parts sold with other property of a like kind or character which shall be subject to the operation and effect of this mortgage."

The mortgage was filed in the office of the county clerk October 7, 1920.

After January 12, 1921, when the first secured note became due, the plaintiff did not at once foreclose the mortgage, and the mortgagor continued in possession of the mortgaged property until sometime in the forepart of February, 1921, when a judgment creditor levied execution thereon. The plaintiff satisfied this creditor, and there-

upon took possession under his mortgage and advertised the stock of goods for sale. On March 7, the day of sale, the defendant, under a writ of attachment in an action by certain creditors against the mortgagor for the purchase price of goods sold and delivered to him in the latter part of January, 1921, seized the goods in controversy which are the identical goods sold by the attaching creditors to the mortgagor. The plaintiff then commenced this action in replevin against the sheriff. The issues were tried to a jury, the verdict and judgment were for the plaintiff, and the defendant prosecutes error.

It is claimed that the judgment should be reversed because there was no evidence of demand. The reason for a demand is to give the defendant an opportunity to surrender the goods without being put to costs. When he contests the case upon a claim of superior right, as did the defendant in this case, he cannot afterwards set up the want of a demand to justify the taking or detention. Wells on Replevin, Secs. 372, 374; Boswell v. Bank, 16 Wyo. 161, 195, 92 Pac. 624, 93 Pac. 661. We think a demand in this case was unnecessary.

It is also claimed that replevin does not lie against a sheriff who has taken the property under a writ of attachment. Authorities are cited to the effect that defendant in attachment cannot maintain replevin against the officer making the seizure, and that replevin does not lie where the officer is not in possession of the property; also, that goods in the custody of the law cannot be replevied. In this case the property was taken from the possession of the mortgagee on process against the mortgagor, and the right of the mortgagee in such a case to bring replevin against the officer in possession is clear, at least under statutory provisions similar to ours. C. S. 1920, Sec. 6276; Cheeseman v. Fenton, 13 Wyo. 436, 448, 80 Pac. 823; note to 7 Ann. Cas. 907.

It is further contended that because the plaintiff did not in terms object to the taking of the goods by the sheriff,

he waived his right to possession under his mortgage lien. We think his failure to object had no such result, but was entirely consistent with an intention later to assert his right to possession by replevin. Edmunds v. Hill, 133 Mass. 445.

The defendant introduced evidence for the purpose of proving that the attaching creditors were induced to sell the goods in question to Angelos by his false representations as to his financial condition, and that because of the fraud in procuring the goods the title to them never passed to Angelos, the mortgagor, and, consequently, never became subject to the lien of mortgage. Some effort was made to prove that the plaintiff made similar false representations, but if it may be conceded that there was any evidence competent for this purpose, it was not such as the jury was bound to believe. And we think, also, that the evidence as to the false representations by Angelos did not require a finding that the sale to him was void, so that the title to the goods did not pass. The goods were attached as the property of Angelos in a suit for the recovery of their purchase price, and the attaching creditors, at the trial of the present suit, were still claiming a right to the purchase price which they were seeking to make out of the attached property. A finding that the title did pass to the mortgagor on the sale and delivery of the goods to him was consistent with this theory, and should not be disturbed. 20 C. J. 12.

It is claimed that the evidence established that the mortgage was void as to the attaching creditors. In considering this point it is first to be observed that there can be no doubt that the jury were warranted in finding that the secured indebtedness was real; that the mortgage given to secure it was of record from October 7, 1920; that no part of the indebtedness was paid; that the mortgagor made default, and that plaintiff, as mortgagee, had taken possession of the goods in question before the defendant seized them under the writ of attachment. These matters, if not

admitted, were not seriously disputed. Of course, a mortgage may be valid between the parties to it and yet void as against creditors if it was intended to hinder, delay or defraud them. In those jurisdictions where there is no statutory declaration on the subject, the authorities are in hopeless conflict upon the question of the effect as to creditors of a mortgage of a stock of merchandise which permits the mortgagor to sell the property in the usual course of business. Jones, Chat. Mtg. Sec. 379 *et seq.* In this state such a transaction is expressly permitted by statute (Sec. 4698, C. S. 1920), which provides:

"It shall be lawful for the parties to any mortgage, bond, conveyance, or other instrument intended to operate as a mortgage of personal property as provided by law, to insert therein permission to the mortgagor to use, handle, operate, herd, manage and control the property mortgaged, and to market, sell and dispose of such portions thereof, as may be necessary in the course of business, or to preserve and care for the same, and replace such property, or parts sold, with other property of like kind or character, which property replaced may be purchased, either with the net proceeds of the mortgaged property sold, or otherwise, all of which shall be subject to the operation and effect of such mortgage, bond, conveyance, or instrument intended to operate as a mortgage. But unless permission is expressly given otherwise in the mortgage, the mortgagor shall pay over to the mortgagee all moneys received from the sale of any part of the mortgaged property aforesaid."

We think the clause which we have quoted from the mortgage in this case is substantially that which the statute expressly authorizes, and a mortgage containing such a stipulation is neither fraudulent as a matter of law nor presumptively fraudulent. McCord Brady & Co. v. Albany County Nat. Bank, 6 Wyo. 507, 46 Pac. 1093, 48 Pac. 1058, 7 Wyo. 9; Hasbrouck v. LaFebre, 23 Wyo. 367, 152 Pac. 168.

In some states a mortgage with permission to the mortgagor to sell the mortgaged property in the course of business is considered fraudulent as to creditors unless it be accompanied by an agreement that the mortgagor account to the mortgagee for the proceeds of sales; but under our statute we think the validity of a mortgage which conforms to the statute does not depend upon the existence of an agreement for accounting. The legislature clearly intended that a mortgagee might, by complying with the statute, permit sales in the usual course of business, upon faith of the mortgagor's promise to replace the property sold.

We are therefore of opinion that the mortgage in this case was not fraudulent because of any agreement that appears on its face. The issue of fraud was one of fact upon which the defendant had the burden of proof. This issue does not appear to have been raised by the pleadings, but inasmuch as it seems to have been tried and submitted to the jury without objection, we shall assume that it was proper to have done so. The only instruction upon the subject was given by the court without objection by defendant, probably on his request, and certainly without any request from him for any further or different instruction on this phase of the case. He relies upon it as a correct statement of the law, and could not now be heard to contend otherwise. The instruction reads as follows:

"The court instructs the jury that if a mortgage on a stock of goods permits the mortgagor to sell these goods, and the mortgage was silent as to the disposition of the sales, and the mortgagor handled said stock of goods after said mortgage was given in the same manner as he did prior thereto, sold the goods, treated the money as his own, paid his private debts, from the proceeds thereof, also his living and all other expenses such as running the store, supporting a large family, and bought furniture for his house, and the mortgagee knew that he was so do-

ing and so using all the proceeds from said sales, that such state of facts would constitute an implied agreement between the mortgagee and mortgagor that the mortgagor might do so, and such an implied agreement would, in law, make such mortgage fraudulent and void as to attaching creditors of the mortgagor, and would give to the mortgagee under said mortgage no ownership or special interest in said stock of goods as against attaching creditors, and consequently said mortgagee, under said mortgage would succeed to no ownership or special interest in said stock of goods as against attaching creditors, which would support a replevin suit; and, that not even taking possession of said stock under said mortgage would validate said mortgage against attaching creditors of the mortgagor.''

We need not inquire whether the plaintiff, in the event of an unfavorable verdict, might have had ground to complain of this instruction. If the verdict in his favor was warranted under it, we shall be content to consider it the law of the case, and shall not undertake to set forth our views as to the correct principle to govern future cases.

As we understand the instruction, the jury were told that the mortgage was void if they found that the mortgagor, with the knowledge of the mortgagee, was using all of the proceeds from sales for the purposes set forth in the instruction.

Upon the issue, as thus defined for the first and only time either in the pleadings or instructions, the jury found against the defendant, and the trial judge, by denying the motion for a new trial, decided that the verdict was sustained by sufficient evidence. We think, in so deciding, he did not err. In fact, the plaintiff in error, in claiming that the evidence required a finding that the mortgage was void as to creditors, does not argue that the verdict should be set aside because of the failure of the jury to find the facts required by this instruction to be

found before they were authorized to treat the mortgage as void; but the true effect of his contention is that the mortgage should have been held invalid because the mortgagee did not require the mortgagor to pay the proceeds of sales in discharge of the mortgage indebtedness. If we should uphold this contention we would defeat the purpose of the statute which is to sanction mortgages whereunder mortgagors may continue in business with express permission to use the proceeds of sales. When such a mortgage is attacked as fraudulent, we may assume that evidence that the mortgagee consented to acts of the mortgagor which depleted the stock without reducing the mortgage indebtedness would be competent to show fraud, at least as to existing creditors. But the mortgagee, by merely permitting the mortgagor to retain the proceeds of authorized sales, is only complying with his contract. From the evidence in this case we cannot say whether or not the goods sold were replaced. Nothing was said about that by any of the witnesses, probably because it did not seem material on any issue raised by the pleadings. The mortgagor had contracted to replace them, the mortgagee may have thought he was doing so, and it may in fact have been done. No issue as to the purpose for which the mortgage was given was submitted to the jury, unless it can be said to have been submitted by the instruction heretofore noticed. Whether there was any evidence that would have supported a finding that the mortgage was made for the purpose of defrauding future creditors, such as are here concerned, we need not decide. We may say, however, that we think the jury would have been warranted in finding that it was made for the sole purpose of securing the indebtedness owing to the plaintiff.

The delay in filing the mortgage for record was not shown to have been for any fraudulent purpose, and we do not think it affected the validity of the mortgage as to the attaching creditors who had no dealings with the mort-

gagor until several months after the mortgage was filed. 11 C. J. 533; 5 R. C. L. 411; Ward vs. Parker, 128 Ia. 124.

The judgment of the district court is affirmed.

*Affirmed.*

Potter, Ch. J., and Blume, J., concur.

NOTE—Headnotes No. 1, see Appeal and Error, 3 C. J. Sec. 599; 7, Appeal and Error, 4 C. J. Sec. 2635; 2-6, 8, 9, Chattel Mortgages 11 C. J. Secs. 220, 275, (1924 Anno.), 302, 326, (1924 Anno.).