## TILLOTSON v. DELFELDER

(No. 1551; April 16, 1929; 276 Pac. 935)

(Rehearing Denied May 28, 1929)

284

The cause was submitted for the appellant on the brief of *M. C. Burk* of Riverton.

The cause was submitted on behalf of respondent on the brief of *A. C. Allen* of Riverton.

Blume, Chief Justice.

This is an action in replevin instituted on October 2, 1926, brought by the plaintiff against the defendant. Judgment was entered for the plaintiff as prayed, and the defendant appeals. The parties will be named herein as in the trial court.

The plaintiff sought to recover 11 head of horses. She claimed a lien thereon by virtue of a chattel mortgage given her on April 12, 1926 by one John Peterson. This mortgage was for "100 head of mixed horses branded P 'lazy 3' on left hip, said horses being between the ages of three and eight years and weighing between 900 pounds and 1,100 pounds respectively," located "on range in Fremont county and in pasture." The mortgage was given to secure the sum of $350, as evidenced by a promissory note due August 12, 1927. The testimony shows that at the time when this mortgage was given plaintiff had in her possession and in her pasture 100 head of Peterson's horses which she had fed and cared for. Immediately subsequent to the giving of the mortgage these horses were turned out on the range. Thereafter Peterson became sick and in the month of May, 1926, he asked the defendant in this case to gather these horses along with

her own, during—what is commonly known as—a "round-up," and agreed to pay one-half of the expenses. Defendant agreed to do so and gathered, it seems, in the neighborhood of 130 horses, part of them being suckling colts. The number of horses owned by Peterson is disputed, counsel for plaintiff claiming that at the time that the mortgage was given Peterson owned not more than 100 head of horses, while some of the evidence tends to show that in fact he owned a greater number. The defendant says that the expenses incurred by her during the "round-up," including expenses for pasture and feed, was over $700, and she claims a lien for $300, pursuant to Section 4803, Wyo. C. S. 1920, which reads as follows:

"Any ranchman, farmer, agistor, or herder of cattle, tavern keeper, or livery stable keeper, to whom any horses, mules, asses, cattle or sheep, shall be entrusted, for the purpose of feeding, herding, pasturing, or ranching, shall have a lien upon said horses, mules, asses, cattle or sheep, for the amount that may be due, for such feeding, herding, pasturing, or ranching, and shall be authorized to retain possession of such horses, mules, asses, cattle or sheep until the said amount is paid; provided, that the provisions of this section shall not be construed to apply to stolen stock."

This lien is given superiority over chattel mortgages by virtue of Section 4815, which reads as follows:

"No mortgage on personal property shall be valid as against the rights and interest of any person entitled to a lien under the provisions of this chapter."

The validity of the provisions of these statutes is not assailed and is not questioned in this action.

Peterson died about July 4, 1926. At that time defendant had the horses which she had gathered during the "round-up" in pasture; but feed became scarce, no one came for the horses, and she claims that as a result of that, she was compelled to let the horses loose again

and dismiss them from the pasture. However, she retained the eleven head of horses sought to be replevined herein in her possession, as security for her lien, proceeded to advertise them for sale, and the replevin action herein is the result thereof.

1. As stated before, the mortgage in question in this case covered horses between the ages of three and eight years, weighing between 900 and 1,100 pounds respectively. Notwithstanding that, plaintiff in her petition seeks to recover, among others, a mare nine years old, weighing 1,150 pounds, a buckskin horse nine years old, a black horse ten years old, weighing 1,150 pounds. The evidence shows that two of the horses involved in this suit were between 12 and 13 years of age, and that another was between 15 and 16 years old. Counsel for the plaintiff in his brief says that "the identity of the horses replevined was established by the mortgage and supported by parol evidence beyond any question of doubt." We cannot understand how counsel can make that statement in the face of the foregoing testimony. Plaintiff had no right to replevin horses not included in the mortgage. That mortgage definitely excluded all horses not of the age or weight specified therein. These ages were not much different at the time the action was instituted. Apparently counsel seem to think that simply because all the horses replevined were within plaintiff's pasture at the time the mortgage was given, they are included within the lien thereof. But, of course, it is too plain for argument that such claim is wholly unfounded in view of the specific description, and therefore limitation, contained in the mortgage. The judgment herein must accordingly be reversed because, if for no other reason, plaintiff was permitted to recover horses not included in her mortgage.

2. Counsel for the plaintiff maintains that the lien claimed by the defendant was waived, when she permitted the horses to be taken under the writ of replevin, instead of giving a re-delivery bond, as she might have done under the statutes of this state. This claim cannot be sustained, inasmuch as we think that the rule contended for by counsel for the plaintiff would be wholly unjust. No cases have been cited in support of this contention. The authorities are agreed, or substantially so, that ''an agistor cannot be deprived of his lien except by a voluntary relinquishment of it or by some act or omission on his part which would estop him from asserting it.'' 3 C. J. 34; 37 C. J. 336, 337; Hall v. Black, 93 Okl. 148, 220 Pac. 50; McBride v. Beakly, (Tex. Civ. App.) 203 S. W. 1137; Adams v. Harvey, 129 Wash. 483, 225 Pac. 407. In the case of Gould v. Hill, (Ida.) 251 Pac. 167, it was said:

''As a general rule a common law or a statutory lien dependent upon possession is waived or lost by the lienholder voluntarily or unconditionally parting with possession or control of the property to which it attaches. However, the lien is not waived or destroyed where there is an intention to preserve the same, the lien-holder only conditionally parting with possession.''

In the case of Hall v. Black, supra, the court said:

''An agistor cannot be deprived of his lien except by a voluntary relinquishment of it or by some act or omission on his part which would estop him from asserting it.''

In the case of Sachs v. Kinyoun, 47 App. Cas. (D. C.) 561, the court appears to have held that when property on which a lien is claimed is replevined, the lien claimant may defend in the replevin suit, setting up the lien, saying in part:

"If the possession of the Sloan Company was in fact the possession of the plaintiffs, then the plaintiffs have the right to defend the suit of replevin and secure the return of the property replevined at the trial of the case. A party claiming a lien as by way of a mortgage on property taken in replevin will be allowed to intervene and set up his claim."

In Carroll v. Anderson, 30 Wyo. 217, 223, 218 Pac. 1038, 1039, this court said:

"It is further contended that because the plaintiff did not in terms object to the taking of the goods by the sheriff, he waived his right to possession under his mortgage lien. We think his failure to object had no such result, but was entirely consistent with an intention later to assert his right to possession by replevin. Edmunds v. Hill, 133 Mass. 445."

The specific point herein appears to have been involved in the case of Howard v. Mortenson, 144 Wash. 661, 258 Pac. 853, in which the syllabus is as follows:

"Defendant having a lien and right of possession to cattle for pasturing them held not to have waived his lien by voluntarily surrendering physical possession to the sheriff seizing the property after having previously levied upon them under an execution to satisfy a judgment against the owner."

We do not think that when a sheriff seizes property under a writ of replevin, a peaceable surrender of the property to the sheriff is a voluntary surrender of the lien. True, the defendant might have given a re-delivery bond, but we do not think that she was compelled to do so. It might often happen that a defendant in a case would not be able to do so.

3. Other objections are raised by counsel for the plaintiff against the validity of the lien, although the scope of his contentions is not clear. Defendant testified to the

contract made with Peterson as to gathering up the horses in a round-up as above mentioned and stated among other things as follows:

"A. He wanted to gather his horses but did not have any money. He knew I was going to gather mine and they ran on the same range, and he wanted me to gather them for him so he could sell them and pay off a mortgage, and he asked me if I would gather his along with mine and he would sell the horses and pay for the round-up if I would do that. He just begged me to round up the horses. Q. Did you accept that offer? A. I did. I told him I would."

Counsel for plaintiff says that "under all the authorities this agreement does not come within the requirements of Chapter 304, Wyoming Compiled Statutes 1920." Unfortunately, he has failed to cite these authorities. If it is his contention that the contract is not sufficiently specific, then we think he is mistaken, as a lien may arise not only from an express but also from an implied contract. Cotton v. Gorrell, 180 Mo. App. 118, 167 S. W. 1187. There is testimony that before the round-up was started, plaintiff had a talk with the defendant. The latter asked the former to join therein, which plaintiff refused to do, and she also at that time refused to agree to let defendant keep enough of the horses to be gathered to pay for half of the expenses of the round-up. We cannot see that this is material. The lien arises by virtue of the statute, provided, of course, that the conditions under which it is given exist, and we cannot perceive why Peterson, the owner of the horses and in control thereof, could not have made the agreement above mentioned, which, under our statutes—which would not be true in those states in which a chattel mortgage is superior to an agistor's lien—would not be binding on the plaintiff. It may be that when plaintiff learned of the intended action of the defendant, she would have been authorized,

under the insecurity clause contained in the mortgage, to have taken possession of the horses covered by the mortgage, but she did not do this. We cannot tell from the brief whether counsel contends that the expenses incurred directly in connection with gathering the horses do not give rise to a lien. The statute gives it for ''feeding, herding, pasturing or ranching.'' The term ''ranching'' is evidently a term with a local meaning, and is found not only in our own statute but also in the statutes of Colorado, Montana and Washington. See McKee Live Stock Co. v. Menzel, 70 Colo. 308, 201 Pac. 52; Love v. Hecer, 67 Mont. 497, 215 Pac. 1099; National City Bank v. Henderson, 59 Wash. 354, 109 Pac. 1038. It has not, so far as we are aware, received any definite construction. Whether it includes the gathering of horses on a ''round-up''—such ''round-ups'' being common in the western states—is a point which ought, perhaps, to be clarified either by testimony or in some other manner, before giving it a definite construction. However, the testimony in this case seems to indicate that pasturing and feeding horses is to some extent at least necessarily incidental to ''round-ups,'' and the evidence is clear that the defendant expended money for feed and pasture for Peterson's horses, the amount thereof not being definite. Perhaps some of this pasture and feed was so used after the round-up was completed. But that would not make any difference. No one came to take charge of the horses, and defendant was not required to let them starve. In that situation, an implied agreement arose that payment should be made for the value of the pasture and feed so used. Cotton v. Gorrell, supra. And there can be no question that, under our statute, the feeding and pasturing of the horses, after they were entrusted to the care of defendant by one authorized to do so, gave her a lien thereon, and she was entitled to retain them in her possession until the lien was duly discharged. True, she let

most of them go during the summer; but that, according to the testimony, was not her fault, but arose out of the scarcity of the feed. We do not think that defendant, by taking charge of the horses under her contract with Peterson, was bound to keep, feed and take care of them for an indefinite time.

4. The petition in the case alleges that the horses replevined herein were of the value of $400 and that was admitted by the answer. Considerable testimony was introduced, and the evidence herein shows, that the horses were only of the value of $88. · Counsel for the defendant objected to the introduction of this testimony and now asks this court to enter a judgment in favor of the defendant for the sum of $400. There is no merit in this contention or claim. Simply because plaintiff alleged the value to be $400 would not show the true value of the horses, and would be no criterion of the amount of dam· ages actually sustained by the defendant, and counsel has cited no authority to sustain his contention.

We very much regret that we are compelled to reverse the judgment in this case. It would hardly seem that, except when an important principle of law should be settled, which is not true here, it is of benefit or profitable either to attorneys or clients to bring to this court an appeal involving only the sum of $88.

The judgment herein is reversed and the cause remanded for a new trial.

*Reversed and Remanded.*

KIMBALL and RINER, JJ., concur.

### ON PETITION FOR REHEARING

BLUME, Chief Justice.

A petition for a rehearing has been filed herein by the appellant, defendant below, on the ground that the court

erred in holding that the allegation of value contained in the petition of plaintiff in replevin, respondent here, and admitted in the answer, was not conclusive of such value, and several cases are cited to the general effect that admissions in pleadings are binding.

An affidavit of replevin need not, under the statutes of this state, contain anything as to the value of the property sought to be taken under a writ of replevin. Section 6275, Wyo. C. S. 1920. The value of the property taken under such writ is, for the purpose of fixing the amount of the undertaking, ascertained by the oath of two or more responsible persons. Section 6282, Wyo. C. S. 1920. We have no specific statute which requires the value of such property to be stated in the petition. Section 5671, Wyo. C. S. 1920, specifically provides as follows:

"Every material allegation of the petition not controverted by the answer, and every material allegation of new matter in the answer not controverted by the reply, shall, for the purpose of the action, be taken as true; but the allegation of new matter in the reply shall be deemed controverted by the adverse party, as upon a direct denial or avoidance, as the case may require, and allegations of value or of amount of damage shall not be considered as true by failure to controvert them."

While this statute mentions only uncontroverted allegations of value, it seems to indicate a general purpose that statements of value are not to be deemed as binding, and we think that to be true at least in actions of replevin. In 23 R. C. L. 930, it is said:

"Good pleading in replevin requires specification of the value of each article sued for. The purpose of this is to give the defendant notice of what is demanded of him. It is not the function of the declaration to fix unalterably the value of the property, but only to apprise the defendant of the nature and the amount of the demand. Where the averment of value in a complaint puts a price on each article, the complaint is sufficient. The fact that it may be in

some instances too high and in others too low is immaterial, as the actual value is a matter for determination upon the evidence."

In 34 Cyc. 1398, it is said:

"Although there is some authority for the proposition that no evidence of value is admissible unless the allegation of value of the petition is denied in the answer, the general rule is that either or both parties may introduce evidence as to the value of the property, regardless of whether plaintiff's allegation in the petition is denied."

In Bailey v. Ellis, 21 Ark. 488, the syllabus reads as follows:

"The allegation in a declaration in replevin as to the value of the property taken by the defendant is matter of form in pleading and not an admission in an inquiry by the jury as to the value."

In the case of Hartford Fire Insurance Company v. Stevens, 123 Me. 368, 123 Atl. 38, which was an action in replevin, the court said:

"With regard to the quality or species of the goods the plaintiff is perhaps bound to prove the fact as laid. But with regard to the number or value of the goods, he may prove less than he charges in his declaration, but he cannot prove more."

In the case of Briggs v. Wiswell, 56 N. H. 319, the court said, among other things:

"The form of the writ of replevin * * * requires the plaintiff to allege the value of the goods to be replevied. * * * The allegation is undoubtedly competent evidence upon the trial as an admission of value by the plaintiff, but I see no reason why it should be held to be conclusive as against him. What weight shall be given to the admission, is the question for the jury under all the circumstances under which it was made. If there should be any facts tending to explain the circumstances under which it was made,

it would only be reasonable that the plaintiff should have the oportunity to lay them before the jury. Often, when he sues out his writ, he may not have the means of fixing the value of the property. It is not in his possession, but in that of the defendant. He may never have seen it, or, in the haste that frequently necessarily is incident to the instituting of a suit, it may be impossible for him to state the value with entire exactness. I think therefore, it would be unreasonable to hold that he should be precluded from laying any evidence before the jury upon the question of value, because he may have been led for reasons that turn out not to be well grounded, to set the value in his writ higher than it actually is.''

In the case of Ferguson v. Comfort, 194 Mo. App. 423, 184 S. W. 1192, the court, among other things, said:

''It is true, as respondent asserts, that one is ordinarily bound by the allegations of his pleading. 	*	*	* 	But the action of replevin is *sui generis*, and the application of this rule to the present case may well be doubted. There is ample authority for holding that in any event the allegation of value in a petition in an action of replevin is to be regarded as a mere matter of form in pleading. 	*	*	* Our statute requires the value to be stated in the affidavit. 	*	*	* 	This serves to fix the amount of the replevin or the forthcoming bond, and is a necessary element of the affidavit. But we take it that it is not material that the petition allege the value. While this by no means concludes the matter before us, we are constrained to hold that the value stated in both the affidavit and petition herein should not be regarded as conclusive on the question of the value of the property at the time of the trial.''

In the case of Consolidated National Bank of Tucson v. Cunningham, 24 Ariz. 437, 210 Pac. 850, the court, among other things, said:

''Replevin actions are often instituted and the affidavit and replevin bond filed in haste, when the plaintiff has not the time to ascertain the value with sufficient accurary to enable him to state it correctly, either in the complaint or the affidavit; and frequently the spirit of the party in possession is so antagonistic that it is practically impossible

and perhaps unwise to attempt to investigate it. It seems unreasonable and unfair, in view of these facts, to compel the plaintiff to state at his peril in advance and with exactness the value of the property and prevent him from showing afterwards for any purpose whatever its true value merely because he has alleged it to be a certain amount, notwithstanding the circumstances may have been such that he could not have known it fully or accurately.''

It will be noticed from the foregoing authorities that even under statutes which require the affidavit of replevin to state the value, it is held that this is not conclusive thereof. So much more must it be true under our statutes that statements of value in the petition are not conclusive, and particularly in view of the provisions of Section 5671, supra. The petition for rehearing herein is accordingly denied.

*Rehearing denied.*

KIMBALL and RINER, JJ., concur.