McLarren *v.* Brewer.

## JOHN H. McLARREN, *in Equity, versus* HENRIETTA B. BREWER, *Administratrix.*

A mere change of property from one form to another cannot, in itself, divest the owner, or those who have distinct and immediate rights in the thing in its original shape, of their property in it.

As a general rule, in such cases, the right attaches to the property in its new form, so long as it is capable of being identified and no rights of a *bona fide* purchaser, for a valuable consideration, and without notice, intervene.

Thus, if the mortgager of a vessel, without the assent of the mortgagee, sell it with warranty of title and receive, as a consideration for the sale, promissory notes, the mortgagee may elect to enforce his right to the vessel, or may follow in equity the proceeds in the form of the promissory notes in the hands of the mortgager, or his representative; but he cannot do both.

In such case, the law *imputes* a trust in the mortgager during his life; and that trust follows the notes in the hands of his representative.

In such case, as the Supreme Court of this State has jurisdiction in all cases of trust, whether arising by implication of law, or otherwise, the mortgagee may maintain a bill in equity against the representative of the mortgager to enforce his claim, the estate of the mortgager being insolvent.

The words in former statutes limiting equity jurisdiction to cases " where the parties have not a plain and adequate remedy at law," being omitted in the Revised Statutes, *it seems,* that the equity powers of the Court are to be determined under the general rules of equity in all cases in which the subject matter is, by statute, cognizable in equity.

BILL IN EQUITY, heard on demurrer.

*B. Bradbury,* for complainant.

*A. Hayden,* for defendants.

The case is stated in the opinion, which was drawn up by

KENT, J.—The case, as stated in the bill, to which a general demurrer has been filed, is in substance this,—I. N. M. Brewer, the intestate, on the 25th of October, 1851, gave to the complainant a mortgage of a ship, then on the stocks, to secure all sums of money then due, and such further sums as the complainant might furnish and advance to said Brewer, for the purpose of finishing said ship and fitting

her for sea. The vessel was completed, and was registered in the name of said Brewer, as owner of seven-eighths, and of Nathaniel Y. French, of one-eighth; the said Brewer, on the back of said mortgage, acknowledged in writing, that the ship thus registered was the vessel named in the mortgage; the mortgage was duly recorded, on the day of registry, in the custom house—and, afterwards, in the town clerk's office; soon afterwards, the ship proceeded to sea, and has never since been in this State, except in June, 1858, and the complainant has not exercised control over her or received any possession under his mortgage. In February, 1858, the ship being in New Orleans, the said Brewer sold to said French the seven-eighths of the ship, which then stood in his name, for their full value, making no reservation of the rights of the complainant under his mortgage, but giving an absolute bill of sale, with warranty, of said seven-eighths. Upon the sale, Brewer received from French, as part of the consideration, his three negotiable notes, amounting in all to $12,240, in nearly equal sums, and payable at different dates, the latest being the first day of March, 1859—the said notes being secured by a mortgage of said vessel, given by French to Brewer. In March, 1858, a few weeks after the sale, Brewer died, and the respondent has been appointed as administratrix on his estate, and said notes and mortgage to Brewer have come into her hands, as such *administratrix*; one of the notes has been paid to her, and she still holds the other notes and mortgage. Brewer's estate is represented as insolvent, and commissioners have been appointed, and have reported that the claim of the complainant is $3654,85; and at the time of the decease of Brewer, a large part of the debt, intended to be secured by the mortgage to him, was due and unpaid, and has not since been paid.

The prayer of the bill is, that the proceeds of the sale of the ship, thus existing in the notes, should be applied by the administratrix to the payment of the complainant's debt,

secured by the mortgage, and for such relief as the nature of the case may require.

The principal question which arises is, whether a mortgagee of a vessel, which has been sold in another and a distant State, by the mortgager in possession, by an absolute bill of sale of the entire vessel or interest, and with warranty, without any prior authority from the mortgagee, can follow the proceeds of the sale, existing in the notes given for the purchase, and in the possession of the mortgager, or his representative?

It is a well settled doctrine, both in law and in equity, that a mere change of property from one form to another cannot, in itself, divest the owner, or those who have distinct and immediate rights in the thing in its original shape, of their property in it. As a general rule, that right attaches to the new form, so long as such new property is capable of being identified and distinguished from all other property, and no rights of any *bona fide* purchaser for a valuable consideration, without notice, intervene. It makes no difference, in law, into what other form the change may have been made, whether into promissory notes, received as the consideration of the transfer, or into other merchandise. The product is substituted for the original thing, and so remains, as long as it can be clearly shown to be such substitute. It ceases when the means of distinguishing and identifying fail. *Scott* v. *Surman,* Willes, 400; *Whitcomb* v. *Jacobs,* Salk., 160; *Taylor* v. *Plumer,* (a leading case,) 3 M. & S., 562; Story's Equity Juris., §§ 1258, 1259.

Money itself may be followed, if it can be thus identified. The difficulty in relation to money usually is, that, as it has "no ear mark," it cannot be thus distinguished. But this is simply a failure of proof, but does not alter or disprove the principle. *Taylor* v. *Plumer,* above cited.

This doctrine has been often applied to agents, factors, and trustees, where the sale has been rightfully made, and the proceeds are existing in notes or other property, and

the agent dies or becomes insolvent. *Thompson* v. *Perkins,* 3 Mason, 232 ; Story's Equity, before cited.

This class of cases is where the sale was made by a person entrusted with the property with a power to sell, or where the sale has been subsequently ratified and confirmed.

But the same principle applies to cases where the property of a party has been misapplied, or a trust fund has been wrongfully converted. " An abuse of trust can confer no rights upon the party abusing it, or on those who are in privity with him." Story's Equity, § 1258. The case of *Taylor* v. *Plumer,* before cited, was one of fraudulent transfer. Mr. Justice STORY, in *Conrad* v. *At. Ins. Co.,* 1 Peters, 448, says, — that this general principle, " has been extended to cases where there has been a fraudulent or tortious misapplication of property."

It may be admitted that the relation of mortgager and mortgagee does not of itself, and, unconnected with other facts, create the relation of principal and agent, or give any right to the mortgager to sell the whole property, by an absolute bill of sale, with warranty of a perfect title. The mortgager in possession may sell *his* interest, *i. e.* his right to redeem, but he is a wrongdoer if he sells and delivers the entire property to a purchaser, without the knowledge or assent of the mortgagee. Such sale, if the existence of the mortgage is not disclosed, is now made a criminal offence. Statute, 1860, c. 150. It may also be granted that, as to the mortgagee and his title and interest, such sale does not convey, nor impair his title, and that he may pursue and enforce his right to the thing, wherever he may find it.

But we think that, under the circumstances stated in this bill, he has an election to do so, or to follow the proceeds existing in the new form of negotiable notes in the hands of the mortgager or the representative of his estate. He may do this on the ground that he assents to and affirms the sale, and to the change of the property, mortgaged to him, from a vessel to the notes taken. A subsequent ratification is

equivalent to a prior authority. We have seen, that if he had had prior authority, he would have come under the rule so often applied to agents and factors.

He may do this, also, on the other ground, that it was a wrongful, if not a fraudulent conversion of his property, by the mortgager in possession, and he may so far waive the tort as to pursue the proceeds in the new form, whilst they can be identified. He must elect which course to pursue; he cannot have both remedies. *Murray* v. *Libbern*, 2 Johns. Ch., 441; *Murray* v. *Ballou*, 1 Johns. Ch., 566.

The bill sufficiently sets out an indebtedness covered by the mortgage. The complainant must, of course, establish such indebtedness, i. e. for money advanced for the purpose of finishing the ship, and fitting her for sea. No other debt or claim is covered by the mortgage.

But, as to this debt, under the circumstances of this case, the law *imputes* a trust in the mortgager, during his life, and that trust follows the notes in the hands of his personal representative. The proceeds of the sale of the ship, in her hands, stand in place of the thing sold, and should be applied, as we have a right to presume Mr. Brewer, if he had lived, would have applied them, so far as needed, to the discharge of the debt secured by the mortgage.

In this case there is not a plain and adequate remedy at law. The estate is insolvent, and, to say the least, it would require a peculiar action and judgment, *in law*, to take these proceeds out of the general mass of the estate, which by law should be distributed *pro rata* among all the creditors, and appropriate it specifically to the complainant's debt. Such appropriation is peculiarly the proper province of a court of equity.

According to the statement in the bill, the claim of the complainant is not equal to any one of the notes, and it would be difficult to find any principle of law by which an action of trover could be maintained for them. The estate is entitled to the notes and the proceeds, after the mortgage

debt is paid, and the claim set up is based on an imputed trust, and not on a legal title to the notes.

It is worthy of observation, that the words limiting the equity powers of this Court to cases, "where the parties have not a plain and adequate remedy at law," which are found in the R. S. of 1841, c. 96, are omitted in the present Revised Statutes. We are not called upon, in this case, to determine whether the omission of these words does in fact enlarge or alter the equity powers of this Court. It seems to leave them under the general rules of equity, in all cases where the subject matter is made by statute cognizable in equity.

It was declared by this Court, in *Tappan* v. *Deblois*, 45 Maine, 131, that "by the Revised Statutes of this State, (1857,) we have jurisdiction of all cases of trust, whether arising by implication of law or created by deed or will."

*Demurrer overruled.*

APPLETON, C. J., CUTTING, DAVIS, DICKERSON and BARROWS, JJ., concurred.