COMMONWEALTH vs. HARRY H. KING.

Hampshire.    September 17, 1889. — November 29, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Indictment — Motion to quash — Map as Evidence — Exceptions — Inland Waters — " Passenger " — Judicial Notice.*

A map of the towns and counties of the Commonwealth, published under a resolve of the Legislature, is admissible in evidence as to the boundaries of a particular town.

An indictment on the Pub. Sts. c. 102, §§ 120–122, alleging that the defendant ran a steamboat for the conveyance of passengers on inland waters not within the maritime jurisdiction of the United States, and landed and received them within a certain town without first obtaining a license so to do from its selectmen, is sufficient without alleging that such passengers were carried for hire.

A bill of exceptions, alleged at the trial of such an indictment, recited that, for the purpose of proving that the place where the boat landed was in that town, a map of the Commonwealth " purporting to be made ' by order of the Legislature in 1844, S. B., Superintendent,' was introduced in evidence, subject to the defendant's objection," without more. *Held,* that the defendant showed no ground of exception.

The court may take judicial notice that the Connecticut River between Springfield and Hadley and above the dam at Holyoke is not within the maritime jurisdiction of the United States.

INDICTMENT on the Pub. Sts. c. 102, §§ 120–122,* in eight counts, alleging that the defendant on June 24, 1888, and at

---

* These sections are as follows:

" Sect. 120.   The mayor and aldermen of a city or the selectmen of a town may license any person to run a steamboat for the conveyance of passengers on lakes, ponds, or waters not within the maritime jurisdiction of the United States.

" Sect. 121.   Such licenses shall be granted for a term not exceeding one year, and shall be recorded by the clerk of the city or town in which they are granted, who shall receive a fee of one dollar for recording each license.   Every such license shall set forth the name of the vessel and of the master and owner, and the number of passengers such vessel is permitted to carry at any one time, and shall be posted in a conspicuous place thereon, and the number of passengers specified in such license shall in no case be exceeded.

" Sect. 122.   Whoever runs a steamboat for the conveyance of passengers on such waters without first obtaining such license from the mayor and aldermen of every city and the selectmen of every town within which such steamboat lands or receives passengers shall be punished by fine not exceeding fifty dollars for each offence."

other times, at the town of South Hadley, in the county of Hampshire, " did run a steamboat for the conveyance of passengers in and upon the waters of the Connecticut River at said South Hadley, such waters not being then and there within the maritime jurisdiction of the United States, and did then and there land and receive passengers from and upon said steamboat in and within the town of South Hadley aforesaid, without then and there first obtaining any license or authority from the selectmen of said town of South Hadley to run said steamboat for the conveyance of passengers as aforesaid, and not then and there having any license or authority therefor."

In the Superior Court, before the jury were impanelled, the defendant moved to quash the indictment, for the following reason, among others: " 4. Because it is not alleged in said indictment, or in any count thereof, that said defendant carried said passengers as aforesaid for hire."

*Brigham*, C. J., overruled the motion, and the defendant excepted.

At the trial there was evidence tending to show that at the times alleged in the indictment the defendant carried persons to and from the city of Holyoke and a landing at a point above high-water mark about one and a quarter miles above the dam at Holyoke, on the east side of the river, alleged to be within the limits of the town of South Hadley, in a steamboat of which he was in possession ; and that on June 24, 1888, the defendant collected fares of twenty-five cents from each person on board of the steamboat for the " round trip," including the right to enter a grove leased by the defendant, to which grove the persons went from the landing place. Among other evidence for the purpose of proving that the point at which the boat landed was in South Hadley, " a map of the State of Massachusetts, purporting to be made ' by order of the Legislature in 1844, Simeon Borden, Superintendent,' was introduced in evidence, subject to the defendant's objection."

It was admitted that the defendant had not obtained any license from the selectmen of said South Hadley to run the steamboat.

The judge refused to rule and instruct the jury, as requested by the defendant, among other things, as follows:

" 3. That there is no evidence that the Connecticut River between Springfield and Hadley is not within the maritime jurisdiction of the United States, and the defendant must be acquitted."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*G. M. Stearns & J. B. O'Donnell*, for the defendant.

*A. J. Waterman*, Attorney General, & *H. A. Wyman*, Second Assistant Attorney General, for the Commonwealth.

FIELD, J.    The only exceptions argued are the exception to the admission of the map in evidence, the exception to the refusal of the court to quash the indictment "because it is not alleged in said indictment, or in any count thereof, that said defendant carried said passengers as aforesaid for hire," and the exception to the refusal of the court to rule "that there is no evidence that the Connecticut River between Springfield and Hadley is not within the maritime jurisdiction of the United States." The other exceptions taken at the trial must be regarded as waived.

If this was a map of the towns and counties of the Commonwealth published by authority of the Legislature, pursuant to chapter 69 of the Resolves of the Year 1844, it was some evidence of the boundaries of the town of South Hadley. See *Worcester* v. *Northborough*, 140 Mass. 397.

The objection taken in argument is, that the map was allowed to prove itself, and that it was not shown to have been published by legislative authority.    Whether this was a genuine map published by order of the Legislature, as it purported to be, was a preliminary fact, of which, if disputed, some evidence must have been exhibited to the court before the map could be admitted in evidence; but it does not appear that this fact was disputed, or that the objection to the admission of the map was taken on this ground.    If such an objection had been taken, the government might, perhaps, have been able to furnish evidence that the map was what it purported to be.    The only objection stated in the exceptions is that the map "was introduced in evidence, subject to the defendant's objection," and this must be considered, not as an objection that sufficient evidence had not been introduced to show that the map was what it purported to be, but as an objection that a map such as this purported to be was not

evidence of the location of a boundary line of a town of the Commonwealth.

In *The Daniel Ball*, 10 Wall. 557, 563, it is said in the opinion : "Those rivers must be regarded as public navigable rivers in law which are navigable in fact.  And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.  And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water."

The Pub. Sts. c. 102, §§ 120–122, were first enacted in 1876. St. 1876, c. 100.  Then, as well as now, the statutes of the United States regulating steam vessels were contained in Title LII. of the Revised Statutes of the United States. ` Section 4400 of these statutes provides, that " all steam vessels navigating any waters of the United States which are common highways of commerce, or open to general or competitive navigation, excepting public vessels of the United States, vessels of other countries, and boats propelled in whole or in part by steam for navigating canals, shall be subject to the provisions of this Title."  See also U. S. St. of Aug. 7, 1882, 22 U. S. Sts. at Large, 346.  This title contains careful provisions for the inspection of steam vessels, and for regulating the number of passengers which they are permitted to carry.  The statutes of Massachusetts were intended to regulate steamboats used for the conveyance of passengers which were not subject to regulation by Congress because they were not used in navigating waters of the United States.  We think that the Superior Court might take judicial notice that the Connecticut River above the dam at Holyoke does not, either by itself or by uniting with other waters, constitute a public highway over which commerce may be carried on with other States or with foreign countries, although, if the court had entertained any doubt on the subject, it might have required evidence to be

produced.   It is well known that the waters of the Connecticut River, at the place where it was alleged that the defendant's steamboat was employed, can be used by vessels only for the transportation of persons and property between different places in Massachusetts.   They are, therefore, waters not within the maritime jurisdiction of the United States.   *Veazie* v. *Moor*, 14 How. 568.   *The Montello*, 11 Wall. 411, and 20 Wall. 430. *Miller* v. *New York*, 109 U. S. 385, 395.

The objection to the form of the indictment cannot prevail. The indictment follows the words of the statute.   The word " passengers " is used in the statute and in the indictment in its ordinary sense, and has the same meaning in one as in the other. If, in order to constitute a passenger, a person must be carried for hire, upon which we express no opinion, there was evidence that at least on one occasion, which was described in the indictment, the defendant collected fares of the persons carried.

*Exceptions overruled.*