## THEX v. SHREVE, ET AL.

(No. 1427; May 8, 1928; 267 Pac. 92)

H. *Glenn Kinsley* and *R. E. McNally*, for appellants.

*Lonabaugh & Lonabaugh,* for respondent.

*H. Glenn Kinsley* and *R. E. McNally,* in reply.

KIMBALL, Justice.

The parties to this action are residents of Montana and the chattel mortgages herein mentioned are Montana mortgages of property in that state. In the year 1923, defendants Ralph J. Shreve and wife gave to the Bank of Ashland of Ashland, Montana, a chattel mortgage of 822 head

of cattle branded HI bar or S bar U to secure the payment of promissory notes for some $56000. The notes and mortgage were afterwards transferred by the Bank of Ashland to the plaintiff, Charles H. Thex, who still holds the notes and has kept the mortgage in effect by renewal as required by the laws of Montana. The amount of this indebtedness has at all times been much in excess of the amount involved in this action. Defendant Ralph J. Shreve was indebted also to defendant Frank Lacy on a note amounting in 1925 to more than $11000. This note was secured by a chattel mortgage on cattle branded BF bar. On October 17, 1925, the mortgagor, at a public sale at his ranch near Decker, Montana, sold some of the mortgaged cattle—possibly all that then survived in his possession. Both Thex and Lacy, the mortgagees, were present at the sale. We may assume that both gave at least implied consent to the sale. Thex bought some of the cattle covered by his mortgage, and credited the amount of his bid therefor on the mortgage indebtedness. It was understood between Shreve and Lacy that Shreve would collect the money for the BF bar cattle and turn it over to Lacy's attorney, Mr. Kinsley of Sheridan, Wyoming, who had in his possession for collection the $11000 note. It was understood between Shreve and Thex that Shreve would collect the money for the HI bar and S bar U cattle, except for those bought by Thex, and send it to the Bank of Ashland for Thex and for credit on the mortgage indebtedness. The sale had been arranged by Shreve, and was conducted by an auctioneer from Sheridan, Wyoming. The auctioneer, not Shreve, collected the money from the purchasers at the sale, and deposited it in the First National Bank of Sheridan, to the credit of Shreve. There were two deposits, the first of $5450.55 made October 22, 1925, and the other of $1504 made November 2, 1925. The total amount $6954.55, was made up of $700, received for BF bar cattle mortgaged to Lacy, $6031.05 received for HI bar and S bar U cattle mortgaged to Thex, and $223.50 received for hogs not covered by

either mortgage. Before the deposit of these sales receipts, Shreve had to his credit in the bank $4.45.

Shreve was notified of the deposits and at once, on November 2, out of the moneys so deposited, paid to Mr. Kinsley for Lacy the $700 received for the BF bar cattle on which Lacy held a mortgage. He did not forward to Thex the money received for the HI bar and S bar U cattle because, as he explains, of sickness in his family that kept him at home, and because of the receipt from Thex of a letter containing an absurd misstatement of the amount for which the cattle had been sold. Shreve, however, does not deny the understanding which made it his duty to send the money to Thex as soon as it was collected.

Besides the check for $700 paid to Kinsley for Lacy, Shreve checked out other amounts for purposes not shown by the evidence. On November 30, and until December 7, 1925, the balance on deposit was $4343.63. There were no deposits other than those mentioned, and there can be no doubt that all of the balance on deposit on December 7, 1925, was money collected for cattle mortgaged to Thex and sold with his consent on October 17.

Mr. Kinsley testified without contradiction that when, on November 2, he received the check for $700, he thought it possible that Shreve might have other moneys on deposit that could be applied to the payment of the Lacy note. He first intended to bring an attachment action, but was deterred by the trouble and expense of furnishing a bond. He then asked Shreve to confess judgment for the balance due on the note for $11000. Shreve consented, and a petition in an action on the note was prepared, and Shreve signed an answer that was a confession of judgment. The petition and answer were filed in the District Court of Sheridan County, Wyoming, on November 28. Judgment in favor of Lacy against Shreve was entered November 30. Execution was issued December 1, and the bank summoned as garnishee. The bank, on December 3, answered that it was indebted to Shreve in the sum of $4343.63, the balance

in his account. The money was applied on Lacy's judgmen by an order entered December 7. Other facts will be stated later.

On discovering what had happened, Thex brought this action to recover the money, naming as defendants Shreve, his wife and Lacy. On a trial without a jury, Thex recovered judgment against Lacy for the full amount received by him from the bank. There was no judgment against Mrs. Shreve, and none against Shreve except for costs. Both Shreve and Lacy appeal.

The plaintiff introduced in evidence certified copies of the chattel mortgage to the Bank of Ashland, the assignment to plaintiff and the affidavit of renewal. The originals of these writings were filed with the county clerk of Big Horn County, Montana, and the clerk's certificate was attached to the copies put in evidence. In offering the evidence, counsel for plaintiff stated that instruments are "certified copies of the records as shown in the county clerk's office of Big Horn County, Montana, and the originals are necessarily not available." The defendants objected to the evidence on the ground that "it is incompetent, irrelevant and immaterial, and no proper foundation laid for the introduction of the same." It is now earnestly argued that the evidence was incompetent, because the copies were not properly authenticated. Plaintiff contends that the objection in the trial court was too general to raise the question of the authentication of the copies, and we believe that contention must be sustained.

There can be no doubt under the authorities that the objection that the evidence was incompetent, irrelevant and immaterial was insufficient to raise the point now urged. The general rule, from which there seems to be no dissent, is stated in Jones on Evidence, (2nd Ed.) Sec. 2520, thus:

"When objection is made to the admission of a record or a document, it is not sufficient to object generally or that the law has not been complied with, or that the evidence is incompetent, irrelevant and immaterial; but any objection

to the manner of authentication or execution should assign the grounds thereof.''

It is said by Wigmore (on Ev. Sec. 18) that: ''The cardinal principle (no sooner repeated by the Courts than it is ignored by counsel) is that a general objection, if overruled, cannot avail.'' The principle was referred to in Reynolds v. Morton, 22 Wyo. 174, 184, 136 Pac. 795, but in that case there was the additional circumstance that the general objection was coupled with the statement of a specific ground. The court, in Reynolds v. Morton, cited Noonan v. Caledonia Mining Co., 121 U. S. 393, 7 Sup. Ct. 911, 30 L. Ed. 1061, which is peculiarly in point here. In the Noonan case, the plaintiff corporation, to establish its corporate existence, gave in evidence certified copies of its articles of incorporation, over an objection that they were incompetent, irrelevant and immaterial. The court said (p. 400):

''The objection to the introduction of the articles of incorporation at the trial was that they were 'immaterial, irrelevant, and incompetent' evidence. The specific objection now urged, that they were not sufficiently authenticated to be admitted in evidence, and that the certificates were made by deputy officers, is one which the general objection does not include. Had it been taken at the trial and deemed tenable, it might have been obviated by other proof of the corporate existence of the plaintiff or by new certificates to the articles of incorporation. The rule is universal, that where an objection is so general as not to indicate the specific grounds upon which it is made, it is unavailing on appeal, unless it be of such character that it could not have been obviated at the trial. The authorities on this point are all one way. Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if under any circumstances that can be done.''

A general objection to documentary evidence is insufficient not only because it does not call the court's attention

to the particular defect, but also because it is unfair to the other party who should have an opportunity to remedy the defect, if that can be done. See, also, Merchants' Savings Bank v. Harding, 65 Kan. 655, 70 Pac. 655 (transscript of foreign judgment) ; City of Chicago v. Gilsdorff, 258 Ill. 212, 101 N. E. 546; Graves v. Bonness, 97 Minn. 278, 107 N. W. 163; Commonwealth v. King, 150 Mass. 221, 22 N. E. 905, 5 L. R. A. 536.

Counsel for defendants apparently do not question the foregoing principle as applied to the objection that evidence is incompetent, irrelevant and immaterial, but claims that in this case the objection that no proper foundation had been laid was sufficiently specific to call attention to defects in the authentication of the instruments. We can find no authority to support that contention. In Christensen v. Tate, 87 Neb. 848, 128 N. W. 622; Graves v. Bonness, 97 Minn. 278, 107 N. W. 163; McElroy v. Williams, 14 Wash. 627, 45 Pac. 306, the objection of "no foundation laid" was held too general to reach defects not dissimilar to the defects in question here. Counsel say that the objection was self-explanatory, and yet they set forth a variety of matters which they claim were raised by it. We may concede that in some circumstances the objection that no foundation has been laid for the offered evidence will be sufficient to call attention to the specific reason why the evidence should not be received. Graves v. Bonness, supra. It might be sufficiently definite to call attention to the fact that no foundation had been laid for asking a question for the purpose of impeachment. Goss v. Goss, 102 Minn. 346, 113 N. W. 690. It may be granted in this case, at least for the purpose of the argument, that the objection called attention to the fact that the copies were secondary evidence and it had not been shown that the originals were not available. See : Kenosha Stove Co. v. Shedd, 82 Ia. 540, 48 N. W. 933; Enid & A. Ry. Co. v. Wiley, 14 Okla. 310, 78 Pac. 96. But that ground of objection in the case at bar was afterwards rendered unimportant by the in-

troduction in evidence of Montana Statutes showing that the original instruments were required to be kept on file in the office of the county clerk.

We do not hold that a general objection is never adequate. Wigmore on Ev., (2nd Ed.) Sec. 18, p. 183; Jones on Ev., Sec. 2521. If the defect cannot be cured, or the evidence is inadmissible for any purpose, a general objection may suffice. McDonald v. Strawn, 78 Okla. 271, 190 Pac. 558.

The trial judge, on request therefor, made separate findings of his conclusions of fact and of law, and the defendants object to many of the findings. We need not discuss in detail these objections. The defendants complain that the judgment is not sustained by sufficient evidence, and have included in the record on appeal all the evidence produced at the trial. In such a case the review here must be upon the whole record, which takes the place of the particular findings, and an error in a finding will not require a reversal of the judgment, unless it appears that the complaining party was prejudiced. Hilliard v. Douglas Oil Fields, 20 Wyo. 201, 214, 122 Pac. 626; Sewall v. Mc-Govern, 29 Wyo. 62, 73-74, 211 Pac. 96.

We are of opinion that Shreve was the agent of plaintiff for the purpose of collecting and transmitting the money due from the purchasers of cattle covered by plaintiff's mortgage. The agreement between plaintiff and Shreve whereby Shreve undertook to collect the money and send it to the bank of Ashland for plaintiff was clearly proved. Shreve, as a witness, admits that he thought the money belonged to plaintiff. In the case of Rock Springs Nat. Bank v. Luman, 6 Wyo. 123, 42 Pac. 874, we held that the mortgagor, selling mortgaged property, held the proceeds as agent of the mortgagee. In that case the mortgage contained a provision authorizing the mortgagor to sell in due course of business, the proceeds to be applied to the payment of the debt. The mortgage from Shreve to Thex contains no provision of that kind, but, on the

question of agency, we cannot see that it is material whether the permission to sell is in the mortgage or in a subsequent agreement of the parties, if it be clear that the mortgagor agrees to collect the money for the mortgagee. See: National Citizens Bank v. Ertz, 83 Minn. 12, 85 N. W. 821, 53 L. R. A. 174, 85 Am. St. Rep. 438; Farmers State Bank v. Anderson, 112 Neb. 413, 199 N. W. 728, 36 A. L. R. 1374; Scurry v. Quaker Oats Co., 201 Ia. 1171, 208 N. W. 860; Martz v. Big Horn Glass Co., (Mo. App.) 269 S. W. 697.

The mortgage from Shreve to plaintiff contains this provision:

"It is further agreed that the lien of this mortgage shall extend to the proceeds derived from the sale of said mortgaged chattels and the purchaser thereof is authorized to pay to the mortgagee the purchase price and the presentation of this mortgage or a true copy thereof will be sufficient evidence of the authority of the said mortgagee to receive the same and that until such property is so sold and disposed of by said mortgagor or mortgagee or their respective assigns the lien of this mortgage upon said property wherever the same may be shall continue and remain in full force and effect."

Counsel on both sides state that they can find no case discussing the effect of a chattel mortgage providing that the lien of the mortgage shall extend to the proceeds derived from sales. "Lien" is not a very good word to describe a right to money in the hands of another. Cases may be found, however, that speak of the lien of a mortgage following or not following the proceeds of sales. And it may be that the quoted provision should have the effect between the parties of an agreement that the proceeds of sales should belong to the mortgagee, and it would follow that the mortgagor, collecting money for the mortgagee, would hold it as agent. We do not think it necessary, in deciding that Shreve held the proceeds as agent for plaintiff, place any great reliance on this provision of the mortgage.

Counsel for defendants, however, have cited authorities that seem to hold that when a mortgagee consents to the sale of the mortgaged property by the mortgagor with the understanding that the money will be applied in payment of the mortgage debt, the mortgagee not only waives his lien on the property sold (which is conceded), and has no lien on the proceeds (which may also be conceded), but that he accepts in lieu of his security, the mere personal promise of the mortgagor to pay the money, and that the mortgagor does not hold the money as agent. Some of the cases cited in support of this view are Maier v. Freeman, 112 Calif. 8, 44 Pac. 357, 53 Am. St. Rep. 151; Smith v. Crawford County State Bank, 99 Ia. 282, 61 N. W. 378; Carr v. Brawley, 34 Okla. 500, 125 Pac. 1131, 43 L. R. A. (N. S.) 302; Minneapolis Threshing Mach. Co. v. Calhoun, 37 S. Dak. 542, 159 N. W. 127; Moore v. Jacobucci, 70 Colo. 171, 197 Pac. 1015.

These cases, in so far as they are applicable in support of the contention in the case at bar that Shreve did not hold the money in question as the agent of the plaintiff, are based, directly or indirectly, on a statement in White Mountain Bank v. West, 46 Me. 15, 20, that:

"Nor did this consent for him (the mortgagor) to sell, make him an agent of Carleton (the mortgagee) for that purpose. It was a release of the mortgage claim, in case of a sale. The effect of a mortgage with such consent for the mortgagor to sell, was to hold the property for the mortgagee against attaching creditors; but, from the time of sale, the lien of the mortgagee was extinguished, and the mortgagee was left with no security but the personal promise of the mortgagor to pay the proceeds to him."

This statement in White Mountain Bank v. West is opposed to our views in Rock Springs Nat. Bank v. Luman, supra, and does not seem to have prevented the courts of Maine from holding that a mortgagor may sell as agent of the mortgagee. In McLarren v. Brewer, 51 Me. 402, a case

of sale by mortgagor without the consent of the mortgagee, it was said (p. 406):

"We have seen, that if he (the mortgagor) had had prior authority, he would have come under the rule so often applied to agents and factors."

In First Nat. Bank v. Eastern T. & B. Co., 108 Me. 79, 79 Atl. 4, the plaintiff bank held a bill of sale, which in effect was a mortgage, of an automobile, sold with the consent of the plaintiff by the mortgagor with the understanding that the proceeds would be remitted to the plaintiff. The proceeds were not remitted, and in a controversy involving the right thereto, it was said, among other things, that as between the plaintiff and the mortgagor.

"* * * there can be no doubt that in equity, at least, the particular money paid to the Willard Company (mortgagor) by the purchaser of the automobile belonged to the plaintiff, at least, to the extent of the amount necessary to repay the bank for its advances."

And, quoting from McLarren v. Brewer, supra:

" 'It is a well settled doctrine that a mere change of property from one form to another cannot in itself divest the owner, or those who have distinct and immediate rights in the thing in its original shape, of their property in it.' * * * 'This doctrine has been applied to agents, factors and trustees where the sale has been rightfully made.' "

The case of White Mountain Bank v. West was not mentioned either in McLarren v. Brewer or First National Bank v. Eastern T. & B. Co.

The proceeds of sales held by Shreve as plaintiff's agent belonged in equity to the plaintiff, and his right was not affected by the deposit of the money to Shreve's credit in the bank at Sheridan. Pennell v. Deffell, 4 De G., M. & G. 372; National Bank v. Insurance Co., 104 U. S. 54, 26 L.

Ed. 693; Union Stock Yards Bank v. Gillispie, 137 U. S. 411, 34 L. Ed. 724. In Pennell v. Deffell, supra, it was said (pp. 382-383):

"When a trustee pays trust money into a bank to his credit, the account being a simple account with himself, not marked or distinguished in any other manner, the debt thus constituted from the bank to him is one which, as long as it remains due, belongs specifically to the trust as much and as effectually as the money so paid would have done, had it specifically been placed by the trustee in a particular repository and so remained: that is to say, if the specific debt shall be claimed on behalf of the *cestuis que trustent*, it must be deemed specifically theirs, as between the trustee and his executors and the general creditors after his death on one hand and the trust on the other."

We concede that the money could not be followed into the hands of some one who took it in good faith and for value in due course of trade or business. The bank, for instance, as assumed in Rock Springs Nat. Bank v. Luman, supra, in the exercise of its right of banker's lien or set-off, having no notice or knowledge of the trust, might have applied the money to the discharge of an indebtedness of the depositor to the bank. The depositor was free to check out the money, and if he had done so, paying the money to his creditor, defendant Lacy (Lacy having no notice or knowledge of the trust), we may assume that plaintiff would have had no recourse against Lacy.

The money was taken from the bank by defendant Lacy by the statutory garnishment in aid of execution. That proceeding is not intended as an adversary action for the settlement of claims of third persons to the fund or property in question. Schloredt v. Boyden, 9 Wyo. 392, 64 Pac. 225; First Nat. Bank. v. Cook, 12 Wyo. 492, 76 Pac. 674, 78 Pac. 1083. The statute requires no notice to be given except to the garnishee. The bank, as garnishee in this case, in its answer made no disclosure that anyone except Shreve had a claim to the fund, and we assume that the bank had

no knowledge of Thex's claim. Neither Shreve nor Thex had knowledge of the garnishment proceeding until the money had been received by Lacy. Without the consent or knowledge of Shreve, Lacy has received in payment of a past indebtedness money held in trust for plaintiff.

The statutory proceedings in aid of execution are for the purpose of enabling the judgment creditor to reach property or funds of an unwilling debtor that would not otherwise be subject to levy, but which in justice should be applied to the payment of the judgment. They were not intended to enable the creditor to take funds which in truth do not belong to the debtor, and which should not, as a matter of equity, be applied to the payment of his debts. Allen v. Woodruff, 2 Ala. App. 415, 56 S. 247; Morrill v. Raymond, 28 Kans. 415, 42 Am. Rep. 167; Hamm Brewing Co. v. Flagstad, 182 Ia. 826, 166 N. W. 289; Ashburner on Mtgs., Pledges, etc. (2nd Ed.), 136; Waples on Attachment, (2nd Ed.), Secs. 365, 366; Freeman on Executions, Sec. 162. The creditor can obtain by the garnishee order only what the judgment debtor could honestly give him. In re General Horticultural Co., 32 Ch. Div. 512; Badeley v. Consolidated Bank, 38 Ch. Div. 512. We recognize the rule, founded on the business necessity or maintaining the currency of money, which renders it unnecessary for one who receives money in the usual course of business to inquire as to the title of the person from whom he receives it. Stephens v. Board of Education, 79 N. Y. 183, 35 Am. Rep. 511; Benjamin v. Welda State Bank, 98 Kan. 361, 158 Pac. 65, L. R. A. 1917A, 704. We do not think that rule is applicable to the facts in this case, though, as already hinted, if Shreve had used the money to pay Lacy, or had consented to the garnishment, we might have a different question. Smith v. Des Moines Nat. Bank, 107 Ia. 620, 78 N. W. 238; Burnett v. Bank, 38 Mich. 630, 635.

The trial judge found that, while Lacy had no actual notice that the garnished moneys were the proceeds of sales of cattle mortgaged to plaintiff, he did have notice and

knowledge of sufficient facts to put him on inquiry as to the source of the fund in question; also that plaintiff, by virtue of his mortgage, had a "lien" on the money. In our view of the law neither the finding of constructive notice nor the finding that there was a lien on the money was necessary to support the judgment, and, therefore, we need not consider the contention that those findings were not warranted by the evidence. Under the admitted facts, it was established that the defendant Lacy had received money which in equity and good conscience belonged to the plaintiff, and we think there is no principal of law to prevent the recovery thereof by the plaintiff in this action.

*The Judgment Is Affirmed.*

BLUME, Ch. J., and RINER, J., concur.