NATIONAL ASSOCIATION OF CREDIT MEN, MONTANA–WYOMING UNIT, Appellant (Plaintiff below),

and

Lone Star Boat Company, Appellant (Plaintiff below),

v.

Keith MOSS, doing business as the Pioneer Sporting Goods, Defendant,

Wyoming Hardware Company, Appellee (Intervener below).

No. 2910.

Supreme Court of Wyoming.

Feb. 16, 1960.

Henry A. Burgess and Bruce P. Badley, Sheridan, for appellant.

Leonard McEwan, Sheridan, for respondent.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

This is an appeal by plaintiffs, who are judgment creditors of defendant, from a judgment awarding the intervener-mortgagee the proceeds of an auction sale held December 12 and 13, 1958, of merchandise subject to its recorded chattel mortgage, which permitted sale of the merchandise in the course of mortgagor's business.

The undisputed facts are that on the 19th day of December, 1958, plaintiffs, as judgment creditors of defendant, simultaneously garnisheed the proceeds of the auction sale which had been deposited in a bank by the clerk of the auction sale in an account designated as "Keith Moss Sale Account". The account was not under the control or subject to withdrawal by the mortgagor. The appellee was permitted to intervene and at the trial established its mortgage, and the fact that prior to the sale the clerk and the defendant were notified in writing that the mortgagee claimed the proceeds of the auction sale by virtue of its recorded chattel mortgage and that payment of the sale proceeds to anyone other than the mortgagee prior to determination of priority of payment would be at the risk of the clerk serving in the capacity of a trustee.

Appellants say the only issue involved in their appeal is whether the trial court erred in holding the mortgagee's lien followed the proceeds of the sale and insist the record clearly shows the mortgagee unconditionally consented to the sale of the mortgaged property and hence was without a prior claim to the proceeds. Appellee disputes this, calling attention that its letter of December 12, 1958, conditioned the sale upon the clerk as trustee paying over the proceeds only in accordance with determined priority. We are inclined to think appellee's position is well taken, inasmuch as the written notification of its claim to the proceeds of the auction sale, coupled with directions as to their disposition, had the effect of conditioning the mortgagee's consent upon the clerk's applying the proceeds of the sale according to priorities which, of course, meant that the proceeds would be applied upon the mortgage debt. Under such a circumstance the consent given to defendant and the clerk was not unconditional.

In jurisdictions where there is no statutory declaration on the subject, the authorities are in conflict as to the effect upon the rights of other creditors of a chattel mortgage which permits sale of the mortgaged property in the course of business. In this State, however, such mortgages are authorized by statute and their validity does not depend upon the existence of any agreement for an accounting. See Carroll v. Anderson, 30 Wyo. 217, 225, 218 P. 1038.

Section 34–255, W.S.1957, formerly § 59–114, W.C.S.1945, reads:

"It shall be lawful for the parties to any mortgage, bond, conveyance, or other instrument intended to operate as a mortgage of personal property as

provided by law, to insert therein permission to the mortgagor to use, handle, operate, herd, manage and control the property mortgaged, and to market, sell and dispose of such portions thereof, as may be necessary in the course of business, or to preserve and care for the same, and replace such property, or parts sold, with other property of like kind or character, which property replaced may be purchased, either with the net proceeds of the mortgaged property sold, or otherwise, all of which shall be subject to the operation and effect of such mortgage, bond, conveyance, or instrument intended to operate as a mortgage. But unless permission is expressly given otherwise in the mortgage, the mortgagor shall pay over to the mortgagee all moneys received from the sale of any part of the mortgaged property aforesaid. Nothing herein contained shall be taken to affect in any way the rights and liabilities existing under any mortgage, bond[,] conveyance or instrument intended to operate as a mortgage, made, executed and recorded prior to the taking effect of this act."

But the auction sale in this case was not made under the statutory permission given in the mortgage. Had the sale been one which the mortgagor could have justified only because made in the course of business by virtue of the statutory permission contained in the mortgage, the mortgagee might have been left to rely solely upon the bare promise of the mortgagor that the sale proceeds would be properly applied. See General Credit Corporation v. First Nat. Bank of Cody, 74 Wyo. 1, 17, 283 P.2d 1009, 1014; Carroll v. Anderson, supra. However, in this instance, the sale was circumscribed by the express limitation placed upon it by the mortgagee's letter to defendant and the auction sale clerk. In other words, the sale was not made under the permissive clause contained in the mortgage, but was made under a condition laid by the mortgagee and agreed to by the tacit acquiescence of the mortgagor and auction clerk in proceeding with the sale after the mortgagee's notification was received by them. This is further evidenced by the manner in which the proceeds were deposited by the clerk.

Appellants call our attention to Rock Springs National Bank v. Luman, 5 Wyo. 159, 38 P. 678, reversed, 6 Wyo. 123, 42 P. 874; Id., Wyo., 43 P. 514; Id., Wyo., 47 P. 73, and correctly say the trial court found that where the proceeds of mortgaged property were traced to a bank which converted the money to its own use, the bank having knowledge and actual notice of its *trust* character, such proceeds belonged to the mortgagee. But appellants attempt to distinguish that case from the instant one by contending that they are in a position dissimilar to that of the bank in the Rock Springs National Bank case because the appellants in the present case were without actual knowledge of the existing chattel mortgage. To the extent the sale proceeds in the Rock Springs National Bank case were in the possession of the bank which converted them to its own use, whereas here the proceeds were in the possession of a disinterested party, there was a difference. There is also the difference that in the cited case the bank converting the funds to its own use had knowledge of their trust character, whereas here the money was sought to be obtained by garnishment at a time when plaintiffs disclaimed any knowledge of the trust character of the funds. Assuming plaintiffs in this matter were without knowledge or actual notice that the moneys were burdened with trust at the time the garnishee levy was attempted, does that lack of knowledge or notice serve to subject bank deposits not owing to, under the control of, and not subject to withdrawal by the debtor, to plaintiffs' garnishment? We think not. The money in the bank was not the unrestricted property of the defendant, but was money subject to the burden of the trust imposed upon it by the letter of December 12, 1958, as was indicated by the designation given to the deposit. This deposit by the auction-sale officials was not made to the account of the defendant-debtor, but was deposited to a

sales account. That this account bore the defendant's name is immaterial, for that was merely a means of identifying the source from which the money came. The deposit was more part of a process for the payment of the sale proceeds to the mortgagee in partial satisfaction of the mortgage debt. In that sense, it was not the money of the judgment debtor but was the property of the mortgagee. When the sale proceeded after both the defendant-mortgagor and the sale officials had received the written notice of the conditions imposed by the mortgagee, the sale officials were acting substantially as the mortgagee's agents and trustees with the mortgagor's approval. This view is not altered by the fact that ordinarily the mortgagee could not have sold the merchandise except in the course of business without foreclosure. It amounted to a sale made under a special agreement between mortgagor and mortgagee providing that the sale proceeds would be applied upon the mortgage indebtedness.

▇▇▇▇ The Rock Springs National Bank case, supra, has also been cited by some courts as deciding that where a chattel mortgage contains a statutory provision permitting mortgagor to sell mortgaged property in the course of business and the mortgage is properly filed or recorded, the mortgage is constructive notice, not only that its described property is encumbered by mortgage, but also notice that *proceeds* of any sale *in the hands of the mortgagor* are held in trust. See Martz v. Big Horn Glass Co., Mo.App., 269 S.W. 697, 699, where the Missouri court interpreted § 4698, C.S.1920, now § 34–255, W.S.1957, as subjecting proceeds of the sale of mortgaged property sold under the provisions of the statutory permission contained in the mortgage to the mortgagee's lien, predicating its decision upon the authority of McCord, Brady & Co. v. Albany County Nat. Bank of Laramie City, 6 Wyo. 507, 46 P. 1093; 7 Wyo. 9, 48 P. 1058, and Rock Springs National Bank v. Luman, supra. This conclusion is possibly due to the syllabus appearing in 6 Wyo. 123. However, what was

said in the opinion in 6 Wyo. 130 and 42 P. 874 is:

" * * * Under express provisions of our statute, the mortgage contained a provision permitting the mortgagor to sell and dispose of the mortgaged sheep, or any portion thereof, in the due course of business, or to preserve and care for the same, and to replace such property sold with other property of like kind and character, which shall be subject to the operation and effect of the mortgage, *with a proviso that the proceeds of such sale or sales shall be applied as and towards the payment of the debt secured by the mortgage.* * * * " (Emphasis supplied.)

As may be seen from the statute in force at that time, and which is quoted at length in the opinion, the matter emphasized above was not a part of the permission to sell authorized by statute. It was a special proviso inserted in the mortgage in addition to provisions expressly sanctioned by statute. Under these circumstances, we cannot but feel that some courts mistook or misunderstood what the opinion really meant and said. Our careful reading of the case inclines us to the view that the court intended only to hold that in view of the non-statutory provision in the mortgage the sale proceeds were earmarked for application solely to the mortgage debt and thereby placed beyond reach of other creditors. In consequence, we do not go so far as to say a recorded chattel mortgage which merely contains the statutory provision for sale of the mortgaged property in the course of business gives constructive notice that a selling mortgagor holds the proceeds of the sale in trust for the benefit of the mortgagee. We do, however, say that the agreement and understanding of the parties in the instant case did constitute the auction clerk a trustee to receive and hold the sale's proceeds for the account of the mortgagee. This holding we believe to be in harmony with the great weight of authority.

Appellants mention Thex v. Shreve, 38 Wyo. 285, 267 P. 92, where a judgment

creditor of a mortgagor garnisheed and obtained proceeds of sale of mortgaged property from a bank where proceeds had been deposited in the name of mortgagor. The mortgagee sued the mortgagor's judgment creditor to recover the sale proceeds from the mortgaged property. It was understood between mortgagor and mortgagee that mortgagor would collect the sale proceeds and send them to a bank for mortgagee to credit them upon his mortgage. The sale was arranged by the mortgagor and was conducted by an auctioneer who collected the money from purchasers and deposited it in the bank to the credit of mortgagor where it was garnisheed by the mortgagor's judgment creditor and paid over to the judgment creditor in response thereto. Judgment was given the mortgagee and the judgment creditor appealed. The appellants in the case now before us urge that the decision in the Thex case has no application, because in the Thex case the mortgage contained a provision that the lien of the mortgage should extend to the proceeds derived from the sale of the mortgaged property. However, our appellants here overlook that in the Thex case this court said:

"* * * We do not think it necessary, in deciding that Shreve [the mortgagor] held the proceeds as agent for plaintiff, to place any great reliance on this provision of the mortgage." Thex v. Shreve, 38 Wyo. 296, 267 P. 95.

In other words, the decision in the Thex case did not hinge upon the clause referred to, but because this court decided the sale proceeds belonged to the mortgagee, not to the mortgagor, even though in that case the proceeds were deposited to the credit of the mortgagor. This is made plain when the court said:

"The proceeds of sales held by Shreve as plaintiff's [mortgagee's] agent belonged in *equity* to the plaintiff, and his right was not affected by the deposit of the money to Shreve's credit in the bank at Sheridan. * *"

(Emphasis supplied.) Thex v. Shreve, 38 Wyo. 298, 267 P. 96.

Further along in its opinion in the Thex case the court defines the limit of a garnisheeing creditor's right:

"The statutory proceedings in aid of execution are for the purpose of enabling the judgment creditor to reach property or funds of an unwilling debtor that would not otherwise be subject to levy, but which in justice should be applied to the payment of the judgment. They were not intended to enable the creditor to take funds which in truth do not belong to the debtor, and which should not, as a matter of equity, be applied to the payment of his debts. * * *" Thex v. Shreve, 38 Wyo. 300, 267 P. 96.

In the same case it was commented that while the trial court found the judgment creditor had no actual notice the garnisheed moneys were the proceeds of the sale of mortgaged property, the creditor had sufficient notice to put him on inquiry as to the source of the fund, and the court said:

"* * * In our view of the law, neither the finding of constructive notice nor the finding that there was a lien on the money was necessary to support the judgment, * * *." Thex v. Shreve, 38 Wyo. 301, 267 P. 97.

We think the Thex case is relevant and important in its bearing upon the issues before us. In fact, it is controlling unless we elect to reverse its holding. This we see no valid reason to do. In consequence, we conclude that irrespective of any notice to the judgment creditors that the funds attempted to be reached by garnishment were subject to an implied trust, or were in fact held under agency or were otherwise not the funds of the judgment debtor and not under his unrestricted control, when the facts of their true character as not being funds of the debtor were shown, such moneys were not subject to garnishment but remained available to the satisfaction of the mortgage obligation.

In Bank of Hinton v. Swan, 156 Iowa 715, 137 N.W. 1032, 1033, where an auction sale of mortgaged property was made pursuant to an oral agreement between mortgagor and mortgagee for the benefit of the mortgagee and other creditors sought to garnishee the sale proceeds, it was said:

"It may be conceded, as claimed by appellant, that Swan held the sale, and employed the auctioneer. It may also be conceded that the lien of a mortgage does not as a matter of law follow or attach to the proceeds of a sale of the mortgaged property. But these concessions do not necessarily entitle plaintiff to the relief it asks in this action. Even if the intervener had no lien of any kind upon the property sold, yet if Swan was indebted to said bank and entered into an agreement with it by which he would make his sale, and have the proceeds thereof delivered to or placed in the hands of the clerk or other designated person to be by said person paid over to the bank, that person would hold such proceeds as *bailee* or *trustee* for the bank, and the fund would not be subject to garnishment at the suit of another creditor of Swan. * * *" (Emphasis supplied.)

This holding was followed in Barrett v. Martzahn, 186 Iowa 548, 173 N.W. 72, 73; Scurry v. Quaker Oats Co., 201 Iowa 1171, 208 N.W. 860, 861; and Korner v. Mc-Kirgan, 202 Iowa 515, 210 N.W. 562. Also the Bank of Hinton case was cited in Current News Features, Inc. v. Pulitzer Pub. Co., 8 Cir., 81 F.2d 288, 292, in support of its holding that where it was reasonable to assume there had been an assignment of a debt to a third person a fund was not subject to garnishment.

Similarly, in Farmers' State Bank of Alva v. Kavanaugh & Shea, 98 Okl. 119, 224 P. 525, where the lower court had upheld the right of a creditor garnisheeing proceeds of sale of mortgaged property under mortgagee's conditional consent, the supreme court reversed. After noting there was no fraud intended and that under the general rule the lien of the mortgage did not follow the proceeds of sale of mortgaged property where mortgagee consented to the sale, the court held that as the sale was not conducted by the mortgagor but by a clerk of the sale, and the proceeds had never been in the hands of the mortgagor nor under his control, the clerk was constituted a trustee of the proceeds of the property sold, not liable to the mortgagor for any of the trust funds and hence performance of the trust could not be defeated by creditors of the mortgagor through garnishee process. Recognition was also given to the universally recognized rule of law that a creditor, as such, has no greater right than his debtor.

The Farmers' State Bank case, supra, was cited with approval and followed in First Security Bank of Pocatello v. Zaring Farm & Livestock Co., 51 Idaho 700, 10 P.2d 303, 305. See also Chapman v. Allen, 115 Vt. 202, 55 A.2d 125, 126. In Sperry v. Renner, 194 Okl. 285, 149 P.2d 781, 782, 783, although the unsuccessful party had cited the Farmers' State Bank case in support of the contention that the consent of mortgagee to sale of the mortgaged property waived the mortgage lien, the court, consistent with the decision in the Oklahoma case, held the sale was pursuant to the conditional consent that proceeds be applied to the mortgage debt, and consequently the proceeds were not subject to garnishment.

In the Missouri case of Bruce v. Kays, 222 Mo.App. 77, 1 S.W.2d 214, 216, 217, it was unsuccessfully urged that the mortgagee had waived its mortgage lien by its agreement that the mortgaged property might be sold and proceeds applied to the mortgage debt.

We find several cases in the Annotations in 97 A.L.R. 646, commencing at page 678, dealing with situations where only conditional consent was given. These cases also bear out the conclusion that where the condition of the consent leaves the possession of the proceeds in the hands of another and beyond the control of the mortgagor, the funds are held in trust and are beyond the reach of an attaching creditor who seeks to reach them by garnishment.

And in Annotation, 36 A.L.R. 1379, 1384, it is said:

"It has been quite generally held that where the consent of the mortgagee to the sale of the mortgaged chattels by the mortgagor is conditioned upon the latter's agreement to apply the proceeds of the sale upon the mortgage debt, the mortgagee does not lose his right to the proceeds by such consent."

Cases noted following the above statement give it support, as do the following additional authorities: J. I. Case Threshing Mach. Co. v. Rominger, 77 Colo. 595, 238 P. 63; Arnold v. First Nat. Bank of Cripple Creek, Colo., 96 Colo. 104, 39 P.2d 791, 97 A.L.R. 643; Acme Feeds, Inc. v. Daniel, 312 Ill.App. 330, 38 N.E.2d 530; Hoebel v. Raymond, 46 Idaho 55, 266 P. 433; First Nat. Bank of Raymond v. Citizens' State Bank of Dooley, 86 Mont. 331, 283 P. 420; Puget Sound Pulp & Timber Co. v. Clear Lake Cedar Corporation, 15 Wash.2d 707, 132 P.2d 363, 143 A.L.R. 1249; James River Bank of Frankfort v. Hansen, 51 S.D. 13, 211 N.W. 976; Caroline State Bank v. Andrews, 204 Wis. 393, 235 N.W. 794; Smith v. Brooks, 154 Neb. 93, 47 N.W.2d 389; United Film Ad Service v. Roach, 222 Mo.App. 339, 297 S.W. 91; Hart v. Farmers' Bank of Bates County, Mo.App., 28 S.W.2d 121.

While appellants quote a portion of the text in 10 Am.Jur., Chattel Mortgages, § 194, p. 844, to the effect that the rule seems to be that where a sale of mortgaged property is made under an agreement with the mortgagee to make the sale and apply the proceeds to the indebtedness, the proceeds found prior to reaching the hands of the mortgagee are subject to levy on execution, attachment or garnishment by other creditors of the mortgagor, the following portion of that section which applies here is omitted:

"* * * The sale may be made, however, under circumstances which do not constitute a waiver of the mortgage lien and where this is the case, other creditors cannot claim the proceeds as against the mortgagee. * * *"

Neither do the appellants deem it important that in 10 Am.Jur., Chattel Mortgages, § 203, pp. 849, 850, it is said:

"It is a settled rule of law that upon a sale of the mortgaged property by the mortgagor with the mortgagee's *unconditional consent*, the mortgage lien does not attach to the proceeds. It has been quite generally held, however, that where the consent is conditioned upon the mortgagor's agreement to apply the proceeds of the sale upon the mortgage debt, the mortgagee does not lose his right to the proceeds by such consent, although there is some authority to the contrary. * * *" (Emphasis supplied.)

Likewise appellants ignore the further statement in 10 Am.Jur., Chattel Mortgages, § 209, p. 854:

"The principle that an attachment or execution lien does not extend beyond the interest of the debtor in the property is very often determinative of the relative rights of chattel mortgagees and attaching or execution creditors. Such creditors hold the remnant, so to speak, of the mortgagor's interest and stand in his place as to the equities of others that may be asserted against it. On this theory it has been held that where a mortgagee consents to a sale of the mortgaged property on condition that a designated person shall act as clerk of the sale and apply the proceeds to the satisfaction of the mortgaged lien, the proceeds of the sale in the hands of such person are not subject to garnishment by a creditor of the mortgagor. * * *"

Nor do we find in appellants' brief any reference to the following statement in 4 Am.Jur., Attachment and Garnishment, § 256, p. 719, which we feel is determinative of the issue in this case:

"The creditor of a bank depositor who garnishes money in the bank to the credit of his debtor is in no better position than the depositor. Consequently, funds cannot be attached or garnished in an action against the

depositor where they have been deposited in trust or belong to another. Thus, money deposited in a bank in the name of an individual, followed by the word 'agent' or 'trustee' or other word suggesting that the depositor is acting as agent or fiduciary of a third person, cannot be garnished as funds of the depositor where it is proved that the depositor did not own the funds, but was acting for another. * * * "

Here the depositor, the clerk of the auction sale, did not claim to be the owner of the funds deposited, and although the words "agent" or "trustee" were not used, the designation of the account as proceeds of a sale, at the very least, put any claimant to the money on notice that the funds were not the unrestricted property of either the person who deposited them or of the person whose name was used to indicate the source from which they came.

It is also said in 4 Am.Jur., Attachment and Garnishment, § 373, p. 790:

"Of course, a beneficial interest in a person other than a debtor is not attachable or garnishable in an action against such debtor. This is in accord with the general rule that only property of the defendant is attachable or garnishable. Thus, a person appointed by the landlord and chattel mortgagee to sell their debtor's goods to satisfy their claims receives the proceeds of such sale, not as an agent for the debtor, but as trustee for the lien holders, and the proceeds are therefore not subject to garnishment in his hands in an action against the debtor. * * * "

█ Similarly, appellants cite 14 C.J.S. Chattel Mortgages § 266, p. 890, referring to the general rule that the lien of a mortgage does not attach to proceeds received from the sale of mortgaged property where the mortgagee consented to or ratified the sale, but omit reference to part (2) of the same section, pp. 891, 892, which says:

"A mortgagee is entitled to the proceeds of a sale of the mortgaged property by the mortgagor when the sale is made upon the condition, agreement, or understanding that the proceeds shall be paid to the mortgagee or his representative. This right of the mortgagee is superior to the claims of the mortgagor, the mortgagor's creditors, a purchaser, or other persons whose claims were inferior to the mortgage lien prior to the sale. If the agreement is for a public sale of mortgaged property with a third person to act as a clerk thereof and collect the proceeds for the mortgagee, the effect of the arrangement is to make the clerk a trustee of the proceeds so collected, or to operate as an assignment thereof, for the benefit of the mortgagee, and they cannot be applied to any other purpose than the satisfaction of the mortgage debt. * * * "

We also note that in 38 C.J.S. Garnishment § 71, p. 268, it is said:

"Generally, the unconditional consent of a chattel mortgagee that the mortgagor may sell the mortgaged property and apply the proceeds on the mortgage debt amounts to a substitution of the mortgagor's personal promise in lieu of the mortgage security, and in such case the proceeds of the sale, while in the hands of the mortgagor, are subject to garnishment by his judgment creditors. However, a contrary result obtains where the mortgagee agrees to the sale on the condition that the proceeds shall be paid to himself or a third person for the purpose of application on the mortgage debt. * * * "

██ In conclusion it may not be amiss to mention, as some of the cited authorities have done, that where it appears fraud has tainted the agreement giving conditional consent, the rule which we adopt cannot apply. Carroll v. Anderson, 30 Wyo. 217, 218 P. 1038. When we say this, we do nothing more than acknowledge the basic rule of law that fraud vitiates everything.

Finding no error in the judgment appealed from, we must affirm the same.

Affirmed.